1  DURIE TANGRI LLP
   DARALYN J. DURIE (SBN 169825)
2  ddurie@durietangri.com
   CLEMENT S. ROBERTS (SBN 209203)
3  croberts@durietangri.com
   LAURA E. MILLER (SBN 271713)
4  lmiller@durietangri.com
   ZAC A. COX (SBN 283535)
5  zcox@durietangri.com
   217 Leidesdorff Street
6  San Francisco, CA  94111
   Telephone:    (415) 362-6666
7  Facsimile:    (415)236-6300

8  Attorneys for Defendant
   NETFLIX, INC.
9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13  OPENTV, INC.                          Case No. 3:14-cv-01525-RS
                                          Case No. 3:14-cv-01723-RS
14                      Plaintiff,
                                          **DEFENDANT NETFLIX, INC.'S MOTION**
15         v.                             **FOR SUMMARY JUDGMENT OF LACK OF**
                                          **PATENTABLE SUBJECT MATTER AS TO**
16  NETFLIX, INC.,                        **U.S. PATENTS 7,055,169, 7,305,691 AND**
                                          **8,332,268**
17                      Defendant.
                                          Date:    September 11, 2014
18  OPENTV, INC. and NAGRA FRANCE SAS,    Time:    9:00 a.m.
                                          Ctrm:    3, 17th Floor
19                      Plaintiffs,       Judge:   Honorable Richard Seeborg

20         v.

21  NETFLIX, INC.,

22                      Defendant.

23

24

25

26

27

28

## TABLE OF CONTENTS

PAGE

NOTICE OF MOTION...................................................................................................1

STATEMENT OF RELIEF SOUGHT .........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.      INTRODUCTION .............................................................................................1

II.     ARGUMENT .....................................................................................................2

        A.    The Court Should Decide the Question of Patentable Subject Matter...............................2

        B.    A Patent May Not Claim An Abstract Idea Implemented On Conventional
              Computers ...............................................................................................................3

        C.    The Claims of the Challenged Patents Are Directed To Abstract Ideas.............................5

              1.    The Claims of the '169 Are Directed to Abstract Ideas..........................................6

              2.    The Claims of the '268 Are Directed To Abstract Ideas .......................................7

              3.    The Claims of the '691 Are Directed To Abstract Ideas .......................................9

        D.    The Claims of the Challenged Patents Do Not Contain Any Additional Elements
              That Would Transform The Claims Into Patentable Subject Matter ................................11

              1.    The Claims of the '169 Do Not Contain Any Transformative Elements ..............11

              2.    The Claims of the '268 Do Not Contain Any Transformative Elements ..............17

              3.    The Claims of the '691 Do Not Contain Any Transformative Elements ..............22

III.    CONCLUSION...................................................................................................24

i

DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY /
CASE NO. 3:14-CV-01525-RS & 3:14-CV-01723-RS

**TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
728 F.3d 1336 (Fed. Cir. 2013), *cert. denied*, No. 13-918, 2014 WL 348249 (June 30,
2014) .................................................................................................................................. passim

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ....................................................................................................... passim

*Bancorp Services, LLC v. Sun Life Assurance Co. of Canada*,
687 F.3d 1266 (2012), *cert. denied*, No. 13-584, 2014 WL 2921725 (June 30, 2014) ....................... 2

*Bancorp Servs. L.L.C. v. Sun Life Assurance Co.*,
687 F.3d 1266 (Fed. Cir. 2012), *cert. denied*, No. 13-584, 2014 WL 2921725 (June 30,
2014) ........................................................................................................................................... 5

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010) ...................................................................................................... 1, 3, 5, 12

*Compression Tech. Solutions, LLC v. EMC Corp.*,
557 Fed. App'x 1001 (Fed. Cir. 2014) ........................................................................................ 3

*Cyberfone Sys., LLC v. Cellco P'ships*,
885 F. Supp. 2d 710 (D. Del. 2012) ........................................................................................... 2

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
558 Fed. App'x 988 (Fed. Cir. 2014) ............................................................................... 2, 5, 12

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ......................................................................................... passim

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ................................................................................................. 5

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
Nos. 2013-1600 –2013-1618, 2014 WL 3377201 (Fed. Cir. July 11, 2014) .............................. 15, 19

*Fort Props., Inc. v. Am. Master Lease LLC*,
671 F.3d 1317 (Fed. Cir. 2012) ............................................................................................... 10

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ..................................................................................................... 4, 12, 20

*In re Abele*,
684 F.2d 902 (C.C.P.A. 1982) ................................................................................................. 17

*In re Beauregard*,
53 F.3d 1583 (Fed. Cir. 1995) ............................................................................................. 6, 10

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008), *aff'd*, *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218
(2010) ...................................................................................................................................... 2, 23

ii

TABLE OF AUTHORITIES (CONT'D)

PAGE(S)

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ........................................................................................... passim

*Parker v. Flook*,
   437 U.S. 584 (1978) ............................................................................................... passim

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ....................................................................................2

*WildTangent v. Ultramercial, LLC*,
   722 F.3d 1335 (Fed. Cir. 2013), *cert. granted, judgment vacated*, No. 13-255, 2014
   WL 2921707 (June 30, 2014) ...................................................................................2, 15

**Statutes**

35 U.S.C. § 101 ...................................................................................................... passim

DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY /
CASE NO. 3:14-CV-01525-RS & 3:14-CV-01723-RS

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 11, 2014, at 9:00 a.m., or as soon thereafter as the matter maybe heard, in the courtroom of the Honorable Richard Seeborg, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Netflix, Inc. ("Netflix") will move this court for summary judgment for lack of patentable subject matter as to U.S. Patents 7,055,169, 7,305,691 and 8,332,268.

**STATEMENT OF RELIEF SOUGHT**

Netflix seeks a summary judgment ruling from this Court that U.S. Patents 7,055,169, 7,305,691 and 8,332,268 are invalid for lack of patentable subject matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The patents challenged in this motion are directed to abstract ideas of startling breath that would not have issued under current law – ideas like "making sure you have the resources you need to make a presentation before you start it" and "using information about a customer to select material for him." The patents claim these ideas in broad functional language that could be performed by a person as a series of purely mental steps and without reference to *any* machine, device, context, or implementation whatsoever.  Indeed, even at their most specific, the patents claim these abstract ideas using only conventional computer equipment, which performs conventional processing steps in order to implement the abstract ideas in a conventional technological environment.

The patent laws do not protect abstract ideas of this kind, even when those concepts are implemented on computers or limited to particular technological environments.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) ("*Alice*"); *see also Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010) ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment ....").   Indeed, as discussed in more detail below, the patents at issue in this motion fail under every test, standard and analytical mechanism that the Supreme Court and Federal Circuit have used to measure abstraction.  The claims, therefore, fall outside the scope of 35 U.S.C. § 101 and are invalid as abstract.

## II.     ARGUMENT

### A.     The Court Should Decide the Question of Patentable Subject Matter

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 3225 (2010) (describing § 101as "a threshold test."); *Parker v. Flook*, 437 U.S. 584, 593 (1978) (inquiry under § 101 "must precede the determination of whether [a] discovery is, in fact, new or obvious"); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("Whether a claim is drawn to patent-eligible subject matter is an issue of law ….").

For this reason, a district court has broad discretion as to the appropriate time to decide whether a patent claim satisfies the requirements of § 101.  For example, in *Bancorp Services, LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (2012), *cert. denied*, No. 13-584, 2014 WL 2921725 (June 30, 2014), the Federal Circuit considered a case in which the district court "declined to construe numerous disputed terms prior to considering invalidity under §101."  The Federal Circuit "perceive[d] no flaw" in the district court's approach to deciding the § 101 issue first, and affirmed the district court's holding of invalidity.  *Id.*  Indeed, the sole case in which the Federal Circuit had suggested that early adjudication of § 101 might be problematical because of the potential for factual issues has been vacated by the Supreme Court.  *See WildTangent v. Ultramercial, LLC*, 722 F.3d 1335 (Fed. Cir. 2013), *cert. granted*, *judgment vacated*, No. 13-255, 2014 WL 2921707 (June 30, 2014).

In the present case, the § 101 issue is ripe for decision because the validity of the asserted claims does not turn on any issue of claim construction.  This fact is not reasonably subject to dispute but, to the extent that OpenTV thinks that its preferred construction of a particular term would make a difference to the eligibility analysis, it should come forward with that construction, provide the supporting intrinsic evidence and explain how its construction would change the result.  *See Cyberfone Sys., LLC v. Cellco P'ships*, 885 F. Supp. 2d 710, 715 (D. Del. 2012) (because "plaintiff did not explain how claim construction might alter [the court's § 101] analysis …. the court concludes that it may proceed without the benefit of claim construction"), *aff'd sub nom. Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988 (Fed. Cir. 2014).  Absent such a showing, the § 101 issue may properly be decided without claim construction.  *See Compression Tech. Solutions, LLC v. EMC Corp.*, 557 Fed. App'x 1001

1    (Fed. Cir. 2014) (summary affirmation of Judge Whyte's decision to invalidate claims under § 101 prior

2    to claim construction after concluding that plaintiff's proffered construction, while of dubious validity,

3    made no difference in the result).

4         Given the number of patents at issue in this case, the potential simplification of the issues, the fact

5    that patentable subject matter is a "threshold issue," and the fact that, in this case, the issue does not turn

6    on claim construction, the Court should exercise its discretion to resolve the issue now.

7         **B.    A Patent May Not Claim An Abstract Idea Implemented On Conventional
             Computers**

8

9         In *Alice*, the Supreme Court applied a two-step framework for determining patent eligibility,

10   previously articulated in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012):

11                First, we determine whether the claims at issue are directed to one of those
                 patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the
12               claims before us?" To answer that question, we consider the elements of
                 each claim both individually and "as an ordered combination" to determine
13               whether the additional elements "transform the nature of the claim" into a
                 patent-eligible application. We have described step two of this analysis as
14               a search for an "inventive concept" – *i.e.*, an element or combination of
                 elements that is sufficient to ensure that the patent in practice amounts to
15               significantly more than a patent upon the [ineligible concept] itself.[1]

16   *Alice*, 134 S. Ct. at 2355.[2]

17        The Court did not endorse a specific approach for evaluating whether a claimed invention is

18   directed to a patent-ineligible abstract idea in satisfaction of the first step. Instead, the Court compared

19   the claims at issue to those it had previously evaluated and found that it "follows from our prior cases,

20   and *Bilski* in particular, that the claims at issue here are directed to an abstract idea." *Id*. at 2356.

21        Having identified the claimed idea as abstract, the Court went on to explain that, in order to

22   survive the second step, "[a] claim that recites an abstract idea must include 'additional features' to

23   ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id*. at

24   2357. In contrast, "[s]imply appending conventional steps, specified at a high level of generality is not

25   '*enough*' to supply an 'inventive concept.'" *Id*.

26   _____

27   [1] Throughout this brief, internal citations and quotation marks are frequently omitted for the sake of
     readability.

28   [2] The "*Alice/Mayo* framework" hereinafter.

1    The Court cautioned that the second step cannot be satisfied by limiting the claims to a particular

2  technological environment or by reciting the use of conventional computers to perform conventional

3  steps.  As the Court explained, its prior cases established "the proposition that the prohibition against

4  patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular

5  technological environment."  *Id*. at 2358.  A claim that recites the use of generic computer components to

6  carry out an abstract idea is not patent eligible precisely because it does no more than that – *i.e.*, it offers

7  no "limitation beyond generally linking the use of the [method] to a particular technological

8  environment, that is, implementation via computers."  *Id*. at 2360.

9    The Supreme Court also found the system claims to be "no different in substance from the

10  method claims" because "[t]he method claims recite the abstract idea implemented on a generic

11  computer; the system claims recite a handful of generic computer components configured to implement

12  the same idea."  *Id*. at 2351.  Because patent eligibility cannot "depend simply on the draftsman's art" the

13  fact that that system claims were "no different … in substance" from the method claims meant that all the

14  claims rose or fell together.  *Id*.

15    The *Alice/Mayo* framework follows a long line of cases finding systems and methods that merely

16  confine the claims to a particular technological environment and/or are implemented using generic

17  computers to be patent ineligible.  In *Gottschalk v. Benson*, for example, the Court rejected "a method of

18  programming a general-purpose digital computer to convert signals from binary-coded decimal form into

19  pure binary form."  409 U.S. 63, 65 (1972).  The Court observed that the steps could be "carried out in

20  existing computers long in use, no new machinery being necessary" and held them invalid under § 101.

21  *Id*. at 67.

22    Similarly, in *Parker*, the Court rejected a claim directed to updating an alarm limit for a catalytic

23  conversion process.  437 U.S. at 585-86.  The Court found that claim not patent eligible "not because it

24  contains a mathematical algorithm as one component, but because once that algorithm is assumed to be

25  within the prior art, the application, considered as a whole, contains no patentable invention."  *Id*. at 594.

26  In other words, the Court held the abstract idea (the algorithm) to one side and then focused on whether

27  the remainder of the claim constituted a patent-eligible invention.  This analytical approach is the same as

28  the second step of the *Alice/Mayo* framework; in both cases, the question is whether the claim contains

an "inventive contribution" other than the abstract idea.  To be patentable, an invention must contain an inventive implementation and not merely an inventive (but abstract) idea coupled with conventional steps and devices.  *See Mayo*, 132 S. Ct. at 1300 ("[S]imply appending conventional steps, specified at a high level of generality, to … abstract ideas cannot make those … ideas patentable.").

For this reason, limiting the use of an abstract idea to a conventional technological environment does not render the idea patentable.  In *Bilski*, 130 S. Ct. at 3231, for example, the Court found that the dependent claims were an "attempt to patent the use of the abstract idea of hedging risk in the energy market and then instruct the use of well-known random analysis techniques to help establish some of the inputs into the equation."  The Court then found that the abstract idea was not rendered patent eligible simply because the claim limited it to a particular domain and/or called for the use of conventional "random analysis" techniques.  *Id*.  Thus, *Bilski* is further support for the proposition that abstract ideas cannot be made patent eligible by limiting them to particular environments or by coupling them with conventional technical steps.

In line with this principle, (and consistent with the holding in *Alice*), the Federal Circuit has repeatedly found that the recitation of conventional computers (including both stand-alone computers and client/server systems) and well-known computing techniques cannot transform an otherwise patent-ineligible abstract idea to a patent-eligible invention.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011); *Bancorp Servs. L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266 (Fed. Cir. 2012), *cert. denied*, No. 13-584, 2014 WL 2921725 (June 30, 2014); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012); *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 728 F.3d 1336, 1342, 1345 (Fed. Cir. 2013), *cert. denied*, No. 13-918, 2014 WL 348249 (June 30, 2014); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988 (Fed. Cir. 2014).

### C.    The Claims of the Challenged Patents Are Directed To Abstract Ideas

The first step of the *Alice*/*Mayo* framework is to determine whether the claims are drawn to an abstract idea.  They are.  Indeed, as set forth below the claims of each of the challenged patents are directed to an idea that is *at least* as abstract (and generally more abstract) than the idea at issue in *Alice*.

### 1.    The Claims of the '169 Are Directed to Abstract Ideas

The '169 patent is directed to and claims the idea of ***ensuring that the necessary resources are available before commencing a presentation that requires those resources***.  Consider, for example, Claim 1 of the '169 patent:

> 1.  A method comprising:
>
> [a] receiving one or more directives, wherein said directives are indicative of an audio, video and/or graphic presentation which requires a set of resources;
>
> [b] determining whether said one or more directives includes a prerequisite directive which indicates that acquisition of a subset of said set of resources is a prerequisite for initiating the presentation;
>
> [c] initiating said presentation, in response to determining the one or more directives do not include said prerequisite directive; and
>
> [d] prohibiting initiation of said presentation until said subset of resources are acquired, in response to determining the one or more directives include said prerequisite directive.

On its face, this claim is directed to an abstract idea.  It does not require any device or machine and a person could literally perform each step of the method in his mind or with a pencil and paper.  For example, a person (say, a lawyer on this case) could [a] receive a directive from the Court ("the Court will allow a PowerPoint presentation in accordance with the local rules") which is indicative of a presentation which requires a set of resources (*e.g.*, a laptop, projector, display screen, and anything else required by the local rules).  The lawyer could [b] *determine* whether the Court's directive includes a prerequisite directive that indicates that acquisition of a subset of these resources is needed to begin the presentation (*e.g.*, whether the local rules require the parties to obtain an order before bringing equipment into the building).  The lawyer could then [c] *initiate* the presentation if no prerequisite were necessary or [d] *prohibit* initiation until s/he had acquired the necessary resources (*e.g.*, obtained the necessary order).  Notably this is not even an ***analogy*** for the claimed process – it ***is*** the claimed process.

The other independent claims are directed to the same idea.  In particular, Claim 23 is virtually identical to Claim 1 but written in *Beauregard* form, while Claims 13 and 22 call for the method to be implemented using a handful of generic computer components (namely a "proxy server," "client device," "receiver," and "a processing unit").  *See In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995).  None of

6

1  these differences (or the elements added by the dependent claims) change the fact that the claims satisfy

2  the first step of the *Alice/Mayo* framework because they are directed to the abstract idea of blocking a

3  presentation until necessary resources are obtained.  Indeed, as shown by the analysis at the second step

4  of the *Alice/Mayo* framework (below) the only things added by Claims 2-23 (beyond more abstract ideas)

5  are references to particular technological environments and generic computers that perform purely

6  conventional processing steps.

### 2.   The Claims of the '268 Are Directed To Abstract Ideas

8         The '268 patent explains that "*[t]he present invention* relates generally to managing the delivery

9  of content to online users and, more particularly, to a method and system for scheduling content

10 delivery."  '268 at 1:13-16 (emphasis added).  In particular, the claims are directed to **using information**

11 **about users to customize a list of content for delivery.**  Consider, for example, Claim 1:

12         1.  A method of scheduling delivery of multiple items of content selectively to
               a plurality of online users, comprising:
13
14         [a] determining expected values relating to each user being online to access
               information over the Internet during a given time period;
15
16         [b] generating an ordered list of the items of content to be selectively
               delivered to the users based on the expected values, said ordered list being
17             prioritized to meet delivery requirements associated with said items of
               content; and
18
           [c] generating an individual list of items of content to be delivered to each
19             user based on the ordered list, wherein said individual list is dynamically
               generated for each user on user login.
20

21        All of the steps called for in Claim 1 could be performed in a person's mind or with a pen and

22 paper.  A person could, for example, mentally *determine* expected values which relate to each user being

23 online during a given time period (*e.g.*, the number of people expected to be online at 8 p.m. on

24 Tuesday), could *generate* a list of content items either in their mind or by writing it down, *prioritize* the

25 list based on delivery requirements (*e.g.*, move items that must be delivered before 9 p.m. to the top of

26 the list) and then *dynamically generate* an individual list of items to be delivered to each user when s/he

27 logs in.  None of these steps even require the use of a general purpose computer.  Instead, they are

28 directed to actions – *determining* expected values and *generating* lists – which can be performed in the

7

DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY /
CASE NO. 3:14-CV-01525-RS & 3:14-CV-01723-RS

1   mind.  That is the hallmark of an abstract idea.  As the Federal Circuit explained in *CyberSource*, 654

2   F.3d at 1372:

3
> It is clear that unpatentable mental processes are the subject matter of claim
4   3.  All of claim 3's method steps can be performed in the human mind, or
    by a human using a pen and paper.  Claim 3 does not limit its scope to any
5   particular fraud detection algorithm ….  Rather, the broad scope of claim 3
    extends to essentially any method of detecting credit card fraud … even
6   methods that can be performed in the human mind.

7   Thus, Claim 1 is directed to an abstract idea and satisfies the first prong of the *Alice*/*Mayo* framework.

8           The other independent claims are directed to the same basic idea with only minor variations.

9   Claims 21, 39 and 53 are method claim which are built on the same verbs, namely, (i) "*determining*

10  expected values," (ii) "*generating* an ordered master list," (iii) "said [ordered master] list *being*

11  *prioritized*," and (iv) "*generating* an individual list of items to be delivered."  The claims do call for the

12  use of different *kinds* of data and for different *kinds* of items to be placed on the lists (and for Claim 39,

13  *delivering* those items).[3]  But nothing about the specific *kind* of data used or the *kind* of content selected

14  changes the fact that the claims are directed to the abstract idea of ***using information about users to***

15  ***customize a list of content for delivery***.

16          Similarly, Claims 35 and 36 are system claims that recite generic hardware components which

17  perform the steps called for in the method claims.  The recitation of this kind of generic hardware makes

18  no difference to the abstractness analysis.  *Alice*, 134 S. Ct. at 2351 ("[T]he system claims are no

19  different from the method claims in substance.  The method claims recite the abstract idea implemented

20  on a generic computer; the system claims recite a handful of generic computer components configured to

21  implement the same idea.").

22          The dependent claims are also directed to the same abstract idea and contain only minor linguistic

23  and contextual variations.  In particular, those claims are directed to: (i) types of data which can be used

24  in *determining* the expected values (Claims 2, 22 and 40); (ii) types of expected values which can be

25  *determined* from the data (Claims 3-4, 23-24 and 41-42); (iii) factors which can be taken into account in

26  ---
[3] The fact that Claim 39 calls for the delivery of items does not change the fact that the claim is directed
27  to an abstract idea.  A person could, after all, *deliver* the items (especially in light of the fact that the
    method of delivery is not specified) and, in any event, the delivery is merely extra-solution activity.  *See*
28  *Parker*, 437 U.S. at 590.

1    *generating* or *prioritizing* the list of items to be delivered to a consumer (Claims 5, 8, 9-11, 17-20, 27-29,

2    34, 45-47, 52 and 54-56); (iv) types of items which can be listed on the recited lists (Claims 12-14, 30-31

3    and 48-50); (v) the frequency with which the recited lists are generated (Claims 6-7, 25-26 and 43-44);

4    (vi) the concept of *tracking* the items that have been delivered to the users (Claims 15, 32 and 51); and

5    (vii) applying the concept to generic technological environments such as the internet (Claims 16, 33, 37-

6    38).[4]   Because (as shown in more detail at the second step of the analysis below) all of the dependent

7    claims are directed either to various *types* of abstract data manipulation and/or recite the use of generic

8    technology to perform *the same idea*, they are, like the independent claims, directed to abstract ideas and

9    satisfy the first prong of the *Alice/Mayo* framework.

10             **3.       The Claims of the '691 Are Directed To Abstract Ideas**

11             The '691 patent is directed to systems and methods "for providing targeted programming to a user

12   outside of the user's home." '691 at Abstract.  In particular, the claims are directed to the abstract idea of

13   ***selecting an item of special interest to a user based on a user profile updated with information about***

14   ***the user's actions and location***.  Consider, for example, Claim 1:

15             1.  A method for providing targeted programming to a user outside of the
16                 user's home, the method comprising:

17             [a] receiving a user identification associated with a user, the user identification
                   comprising an identifier corresponding to an account number used in a
18                 transaction;

19             [b] receiving reception site information to identify a user action and a site at
                   which the user action is taking place;

20
               [c] capturing additional user information from the identified user action and
21                 the reception site information;

22             [d] updating a user profile to include the captured additional user information;

23             [e] receiving the updated user profile based upon the user identification and
                   the additional user information, the user profile including information
24                 characteristic of the user;

25             [f] processing the updated user profile to provide user determinations
                   regarding user actions;

26   ───────────────────────
     [4] Limiting the claim to such an environment does not render it patent eligible.  *See Accenture*, 728 F.3d
27   at 1345 ("Accenture attempts to limit the abstract idea of claim 1 by applying it in a computer
     environment and within the insurance industry.  However, those types of limitations do not 'narrow,
28   confine, or otherwise tie down the claim.'").

[g] selecting a targeted program based on the reception site information and the updated user profile and the user determinations, and

[h] providing the targeted program for presentation to a user outside of the user's home.

All of the steps of this method could be performed by a person either in his mind or with pencil and paper.  A person could, for example *receive* (either orally or in writing) both [a] a user identification (including an ID number) and [b] information about both a user's action and the location where that action took place.  The person performing the method could then [c] *capture* (by, for example, writing it down) additional information about the user based on the nature of the action and the location, and use it to [d] *update* the user's profile.  For example, based on a report that a particular user was playing football in the park, a person performing the method might update the user's profile with information that the user "likes outdoor sports."  The person might also [e] *receive* the updated user profile (at, for example, a later time) and [f] *process* the profile (by, for example, reading it and taking notes) to provide information about the user's actions.  Our hero might then use all of the foregoing information to [g] *select* a program (*e.g.*, an NFL game) that was specifically targeted to the user and then [h] *provide* the program to the user outside of his home (by, for example, hand delivering a copy to him at his workplace).[5]

This claim is abstract under every analytical approach the Supreme Court and Federal Circuit have articulated.  It is directed to purely mental steps, does not involve *any* machine, and amounts to nothing "substantially more" than the idea of selecting an item of special interest to a user based on a user profile updated with information about the user's actions and location.  *See CyberSource*, 654 F.3d at 1372; *accord Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322-23 (Fed. Cir. 2012) (invention that can be processed using paper or other writing is insufficiently tied to the real world).

The other independent claims are not materially different.  Claims 23 and 48 are system claims that call for performing the method of Claim 1 using generic computer equipment.  In particular, they call for using a "user interface device" and/or an "input device" to obtain the information, a "controller" to receive the information and select the program, and a "presentation device" to receive the program on behalf of the user.  Claims 70 and 71 recite the same method of Claim 1, but are written in *Beauregard*

---

[5] Notably, according to dependent Claim 22 the "program" may be something as simple as "graphics" or "textual information" and therefore is something that could be *created* by a person using nothing more than pencil and paper.

form.  And Claim 72 recites the same idea in means-plus-function form.  Thus *all* of the independent claims are directed to the same abstract idea as Claim 1 and satisfy the first prong of the *Alice*/*Mayo* framework.

As shown in more detail below (in connection with the second prong of the *Alice*/*Mayo* framework), the dependent claims only add minor modifications and do not change the abstract *idea* to which each claim, as a whole, is directed.  Indeed, the dependent claims all either: (i) recite generic computer devices for storing, processing and moving the data used in the claims (Claims 2, 3, 4, 7, 8, 9, 11, 14-20, 24-26, 28, 29, 32-36, 38-47, 49-54, 56, 59-67); (ii) apply the claimed idea to single or multiple users (Claims 5, 6, 37, 68, 69); and/or (iii) call for using the claimed method with different kinds of programs and/or well-known data formats (Claims 10, 12, 13, 21, 22, 27, 30, 31, 55, 57, 58).  In other words, the dependent claims are all directed to minor *variations* on the abstract idea that is embodied in the independent claims and not to *different* ideas.

### D.    The Claims of the Challenged Patents Do Not Contain Any Additional Elements That Would Transform The Claims Into Patentable Subject Matter

The second step of the *Alice*/*Mayo* framework requires determining whether the claims contain an inventive concept sufficient to transform the recited abstract idea into a patent-eligible invention.  In *Alice*, the Supreme Court warned that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment" and that for this reason "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice*, 134 S. Ct. at 2358.  Indeed, "[g]iven the ubiquity of computers . . . [a] wholly generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself.'"  *Id*.  Yet such a "wholly generic computer implementations" are the only things – beside the abstract ideas – recited by the challenged claims.

### 1.    The Claims of the '169 Do Not Contain Any Transformative Elements

The '169 patent has 23 claims of which four (Claims 1, 13, 22 and 23) are independent.  All claim abstract ideas.  As noted above, Claim 1 of the '169 patent could *literally* be performed in the human mind or with pencil and paper.  It does not contain any reference to a computer or other machine.

11

DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY / CASE NO. 3:14-CV-01525-RS & 3:14-CV-01723-RS

Instead, it is directed to a process that could be performed by a person and which could apply to *any* technological context and/or activity.  For this reason, it directly implicates the "pre-emption concern that undergirds [the Court's] §101 jurisprudence."  *Alice*, 134 S. Ct. at 2358; *see also Gottschalk*, 409 U.S. at 67 ("[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work.").  There is *nothing* in the claim that could act as the kind of "additional element" needed to "'transform' the claimed abstract idea into a patent-eligible application" or "to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]."  *Alice*, 134 S. Ct. at 2357.

Claim 2 depends from Claim 1 and further requires that the prerequisite directive includes "one or more directives selected from the group consisting of: a markup language, a scripting language, and a style sheet."  In other words, Claim 2 calls for the directives to be *expressed* in either of two different types of languages and/or through a style sheet.  But *languages* and *style sheets* are abstract ideas in and of themselves.  At most they are a group of rules and conventions for expressing information, which can be spoken or written down by a person using paper and pencil.  Thus, Claim 2 adds only another abstract idea onto Claim 1 and does not transform the claim as a whole into patentable subject matter.

Claim 3 depends from Claim 2 and further requires that the directives "are received by a proxy server in an interactive television system."  At most, this claim calls for a conventional computer (the proxy server)[6] to perform a conventional step (receiving information) in the context of a particular technical environment (*i.e.*, an interactive television system).  The Court has been clear, however, that "the prohibition against patenting abstract ideas ***cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment***" such as interactive television.  *Alice*, 134 S. Ct. at 2358 (emphasis added); *see also Bilski*, 130 S. Ct. at 3230.  Nor is Claim 3 rendered patentable by reciting the use of a server to receive information.  Indeed, *Alice* expressly held that abstract methods are not rendered patentable where "each step does no more than require a generic computer to perform

---

[6] The specification indicates that the "proxy server … includes [a] server … and [a] processing mechanism." '169 at 4:51-52.  In other words, it is made up of generic components.  *See Alice*, 134 S. Ct. at 2360 ("[A] 'data processing system' with a 'communications controller' and 'data storage unit,' for example . . . is purely functional and generic."); *Accenture*, 728 F.3d at 1342, 1345 (claims reciting a both client and server components are invalid under § 101); *Cyberfone*, 558 Fed. App'x at 992 (a telephone is "not a specific machine, and adds nothing of significance to the claimed abstract idea.").

1   generic computer functions." *Alice*, 134 S. Ct. at 2359.  And in *Accenture*, the Federal Circuit rejected

2   claims that were *both* limited to a particular technical environment (insurance claims processing) and to a

3   client/server implementation.  728 F.3d at 1345 ("Accenture's attempts to limit the abstract concept to a

4   computer implementation and to a specific industry … do not provide additional substantive limitations

5   to avoid preempting the abstract idea of system claim 1.").

6          Claim 4 depends from Claim 3 and further requires that the determining step "is performed by

7   [the] proxy server" and that the proxy server sends "signals indicative of said subset of resources to a

8   remote client device."  Again, however, signals and servers are both conventional and generic technology

9   and thus these limitations add nothing to the base claim besides the notion that the abstract idea is to be

10   performed using generic computer components.  That is not sufficient.  *See CyberSource*, 654 F.3d at

11   1375 ("[T]he basic character of a process claim drawn to an abstract idea is not changed by claiming only

12   its performance by computers ….").

13          Claim 5 depends from Claim 4 and further requires "acquiring said subset of resources in

14   response to detecting said signals."  This is merely the addition of another abstract idea: obtaining the

15   necessary resources in response to an (undefined and generic) signal indicating that those resources are

16   needed.  The addition of such an abstract idea cannot *transform* the claim into patent-eligible subject

17   matter.  Instead, it simply piles one abstract idea on top of another.

18          Claim 6 depends from Claim 5 and further specifies that "said subset" includes "streaming audio

19   and/or video" and that the act of acquiring it includes "configuring hardware resources within said client

20   device."  All this claim does is specify a *type* of information which can be used as a resource in the

21   claimed method (*i.e.*, *streaming* audio or video) and call for making (unspecified) adjustments to

22   (unspecified) hardware within a (unspecified) "client device" in order to obtain it.  This is exactly the

23   kind of vague, generic recitation of computer components rejected in *Alice*.

24          Claim 7 depends from Claim 5 and specifies that the "acquisition of the subset of resources"

25   includes "the client device initiating requests for remotely located resources to be conveyed to said client

26   device."  Thus, the claim requires no more than an (unspecified) computer fetching needed information

27   from a remote location.  In other words, this claim "does no more than require a generic computer to

28   perform generic computer functions" and does not add a transformative element.  *Alice*, 134 S. Ct. at

13

DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY /
CASE NO. 3:14-CV-01525-RS & 3:14-CV-01723-RS

2359.

Claims 8, 9, 10 and 11 all depend from Claim 1 and call for adding a piece of data that designates an (unspecified) resource as a prerequisite.  The only difference between the claims is that each one calls for performing this task in the context of different programming or industry standard.  Thus, Claim 8 calls for "enhancing a root entity in DTD to add a showstopper attribute indicative of prerequisite resources," Claim 9 calls for "using a label within a Declarative Data Essence standard as an attribute to indicate a prerequisite resource," Claim 10 calls for "enhancing DVB-MHP by adding a showstopper AIT descriptor indicative of pre-requisite resources" and Claim 11 calls for "defining a META name/value pair, wherein said name is indicative that said corresponding value is a prerequisite resource."  All four of these claims are directed to the same idea – adding data (by "enhancing a root entity," "using a label," "adding a … descriptor" and "defining … a name/value pair") to a well-known data structure (a Document Type Definition, a Declarative Data Essence standard, an Application Information Table, and a Metadata definition) in order to "indicate" one or more "pre-requisite resources."  While the claims use slightly different terminology,[7] nothing about the subject matter eligibility depends on how the Court construes the terms.  Indeed, *regardless* of their construction, all of these claims call for adding a piece of data to a data structure in order to specify which resources are essential within a particular technological context.

Claiming the application of an abstract idea in a particular technological context is *not* patentable. As the Supreme Court explained in *Alice*, "[s]tating an abstract idea while adding the words 'apply it' is not enough for patent eligibility.  Nor is limiting the use of an abstract idea to a particular technological environment" because it does nothing to mitigate "the pre-emption concern that undergirds our §101 jurisprudence."  134 S. Ct. at 2358.  The Federal Circuit has so held as well.  For example, in *Accenture*, the Federal Circuit noted that Accenture had attempted "to limit the abstract idea of claim 1 by applying it in a computer environment and within the insurance industry."  728 F.3d at 1345.  In particular, Accenture had drafted its claims to include a "claim folder, a task library database, a server component,

---

[7] For example, two of the claims use the term "showstopper" which the patent indicates are types of "essential resources [that] may be referred to as showstoppers because creators do not want anything displayed until at least these essential resources are available" '169 patent at 47:30-32.

and a task engine" and to specify the causal interactions between those elements. The Federal Circuit nevertheless found that the claims were invalid under § 101 because "those types of limitations do not 'narrow, confine or otherwise tie down the claim.'" *Id.*[8] Indeed, the Federal Circuit has held (post-*Alice*) that the kind of data manipulation recited in claims 8-11 is *not* patent eligible. *See Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, Nos. 2013-1600 – 2013-1618, 2014 WL 3377201, at *5 (Fed. Cir. July 11, 2014) ("[A] process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."). Thus Claims 8-11 do not add the kind of additional elements that would transform the base claim so as to render it patent eligible.

Claim 12 depends from Claim 1 and further requires that the "prohibiting is in further response to detecting a corresponding time for expiration has not yet expired" and for "allowing the presenting of said presentation in response to detecting said time for expiration has expired." Thus, Claim 12 adds to Claim 1 the abstract idea of only allowing the presentation to go forward after an (unspecified) time period has expired. This is, yet again, simply another abstract idea – and adding it to the abstract idea of the base claim cannot transform the combination into patent-eligible subject matter.

Claim 13 is an independent claim which is very similar to Claim 1. The only difference is that Claim 13 is directed to a "remote proxy server" which is "configured to" perform steps [a] and [b] of Claim 1 and to send signals identifying the relevant directives and resources to "a client device" which performs step [d] in response to those signals. In other words, the only *possible* "additional elements" are the "proxy server," "client device" and the signals transmitted between them. None of these things, however, is the kind of element which *Alice* indicated may be transformative. To the contrary, the claims rejected in *Alice* contained similar components, including "a 'data processing system' with a 'communications controller' and 'data storage unit.'" *Alice*, 134 S. Ct. at 2360. And they are *far* less detailed than the computer components (including a client, server, software engines and the transmission of signals and responses) found inadequate in *Accenture*. 728 F.3d at 1344.

---

[8] Notably, the decisions in *Accenture* and *Ultramercial* were both pending before the Supreme Court when *Alice* was decided. Shortly after issuing its decision in *Alice*, the Court vacated and remanded *Ultramercial* and declined to review the decision in *Accenture*. *WildTangent v. Ultramercial, LLC*, No. 13-255, 2014 WL 2921707 (U.S. June 30, 2014); *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, No. 13-918, 2014 WL 348249 (U.S. June 30, 2014).

The claims that depend from Claim 13 are similar or identical to Claim 1's dependents and fail for the same reasons.  In particular, (i) Claim 14 is identical to Claim 2; (ii) Claim 15 is directed to configuring hardware resources within the client device as in the second half of Claim 6; (iii) Claim 16 is the same (with only minor grammatical differences) as Claim 7; (iv) Claim 17 is identical to Claim 8; (v) Claim 18 is similar to Claim 9 except it calls for using the "attribute indicative of a prerequisite resource" in a directive rather than in a standard defining those directives; (vi) Claim 19 is identical to Claim 10; (vii) Claim 20 is identical to Claim 11 and (viii) Claim 21 is the same (with only minor grammatical differences) as Claim 12.  In other words, all of the claims that depend from Claim 13 fail for the same reasons as the claims that depend from Claim 1.

Claim 22 is another independent claim that adds nothing significant to the abstract idea of Claim 1.  The only difference between the claims is that Claim 22 calls for "a receiver" that receives the directives of step [a], and a generic "processing unit" which performs steps [b], [c] and [d].  Under *Alice*, those generic computer additions cannot render the claim patent eligible.[9]  *See Alice*, 134 S. Ct. at 2359-60.

The same thing is true of (the final) Claim 23, which is the same as Claim 1 but written in *Beauregard* form.  Simply redrafting a claim to be directed to a computer-readable medium containing instructions for performing an otherwise abstract method does not transform the claim and would turn patent eligibility into something that would "depend simply on the draftsman's art."  *Id.* at 2359.  Indeed, for this very reason, the Supreme Court found in *Alice* that the *Beauregard* claims "add[ed] nothing of substance to the underlying abstract idea" and were ineligible under § 101.  *Id.* at 2360.

As shown above, claims 2-23 of the '169 patent add only generic computer equipment, references to particular technological environments, types of data, and conventional data structures to the abstract idea recited in Claim 1.  Because *none* of these additional features transform the nature of the claims, the

---

[9] The fact that these devices are totally generic is both apparent from the way they are claimed, and from their description in the specification.  *See, e.g.*, '169 at 3:11-16 ("Each of receiving devices 30 ***may comprise any suitable device***, such as a set-top box (STB), a television (TV), a video cassette recorder (VCR), a digital video recorder (DVR), a personal digital assistant (PDA), a personal computer (PC), a video game console, or a mobile/cell phone.") (emphasis added); *id.* at 5:33-35 ("Control unit 1030 may comprise a microprocessor, memory (*e.g.*, RAM), ***and other components which are necessary to perform ordinary general purpose computing***.") (emphasis added).

1    Court should hold all of the claims of the '169 patent invalid.

2              2.      **The Claims of the '268 Do Not Contain Any Transformative Elements**

3          There are 56 claims in the '268 patent of which six (Claims 1, 21, 35, 36, 39 and 53) are

4    independent.  None of the claims are directed to patentable subject matter.  As discussed above, Claim 1

5    of the '268 patent can be performed in the human mind or with pencil and paper and does not contain any

6    reference to a computer or other machine.  Instead, it is directed to a process that could be performed by

7    a person and which could apply to any context.  For this reason, there is *nothing* in the claim that could

8    act as the kind of "additional element" needed to "transform the nature of the claim into a patent-eligible

9    invention" or to "ensure that the [claim] is more than a drafting effort designed to monopolize the

10   [abstract idea]."  *Alice*, 134 S. Ct. at 2350, 2357.

11         Indeed, the only things which might even *imply* a computer are (i) the preamble's reference to

12   "scheduling delivery of multiple items of content selectively to a plurality of online users" and (ii) the

13   final limitation's recitation that the "individual list is dynamically generated for each user on user login."

14   But neither of these limitations requires the use of a computer *to perform* the claimed method.  After all,

15   *scheduling* the delivery of items to users online can be done without a computer and generating a list

16   *upon user login* can be done by a person in response to *someone else* using a computer.  Thus, at most,

17   these limitations imply that the claimed methods are to be performed in a context where *other people* are

18   using computers, while the method itself remains devoid of any possibly transformative element.[10]

19         The other independent method claims (Claim 21, 39 and 53) are of the same character.  None of

20   them contain *any* limitation that even requires the use of a computer, much less a specific and novel

21   implementation.  Indeed, the *only* possible reference to a computer in the independent method claims is

22   Claim 39's final limitation which calls for "delivering to each logged on user items of content specified

23   in the user's individual list."  On its face, this limitation does not call for the user of a computer – it does

24   not require, for example, that the *delivery* is performed *via* computer as opposed to (for example) via

25   messenger service or homing pigeon.  But even if the claim were construed to require *electronic* or

26

27   _____
     [10] Even if the Court concludes otherwise – *i.e.*, it concludes that the claims are limited to computers or to
     an online environment – that would not render them patent eligible for the reasons discussed in
28   connection with Claims 35-36 and 37-38.

                                                      17

1    *online* delivery, it would not transform the claim but instead would do "no more than require a generic

2    computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359.

3        Indeed, the delivery of items to the user *after* the purportedly inventive listing process has been

4    accomplished cannot render the claim patentable because it is insignificant post-solution activity. *See*

5    *Parker*, 437 U.S. at 590 ("The notion that post-solution activity, no matter how conventional or obvious

6    in itself, can transform an unpatentable principle into a patentable process exalts form over substance.");

7    *Mayo*, 132 S. Ct. at 1298 (2012) ("Purely 'conventional or obvious' '[pre]-solution activity' is normally

8    not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a

9    law.").

10       The independent system claims (Claims 35 and 36) also do not contain any transformative

11   elements.  All they add to the (abstract) method claims is a handful of generic computer components,

12   namely a "memory for storing a program," "a processer operative with the program," a "central

13   computer" and "a plurality of local computers."  This is exactly the sort of bare recitation of generic

14   computer elements that the Court has found inadequate to confer patent eligibility. *See Alice*, 134 S. Ct.

15   at 2358 ("[W]hat petitioner characterizes as specific hardware – a 'data processing system' with a

16   'communications controller' and 'data storage unit,' for example … is purely functional and generic.");

17   *see also Cybersource* 654 F.3d at 1375 ("[T]he basic character of a process claim drawn to an abstract

18   idea is not changed by claiming only its performance by computers ....").

19       None of the dependent claims contains anything that could transform the claims into eligible

20   subject matter.  For example, Claims 2, 22 and 40 specify a type of data from which the expected values

21   can be calculated – namely "observed behavior of individual users."  Thus, they simply provide for an

22   additional type of *data* upon which the abstract method could act, but do nothing to change the fact that

23   the method itself is directed to data manipulation in the abstract.

24       Claims 3-4, 23-24 and 41-42 each specify a type of data which the expected values can include.

25   In particular, claims 3, 23 and 41 call for using the "probability of each user being online during the

26   given time period" while claims 4, 24 and 42 call for including "a length of time each user is expected to

27   be online during the given time period."  Thus, the claims are all directed to the *type* of data involved in

28   the manipulation recited in the claimed method – which does not change the fact that the method is

18

DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY /
CASE NO. 3:14-CV-01525-RS & 3:14-CV-01723-RS

directed to abstract data manipulation.

Claims 5 and 8 add the concept of using user profile or preference data as criteria for selecting content for individual users.  The idea of using a user profile or preference data (both of which are abstract collections of data in and of themselves) to select other data items simply adds another element of data manipulation to the base claim and does not render the claims patent eligible.  *See Digitech*, 2014 WL 3377201, at *5 ("[A] process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible.").

Claims 6, 25 and 43 add the concept of *generating* the first list periodically, while Claims 7, 26 and 44 further specify the period as "daily."  But none of these claims change the fact that the act of *generating* the list is a mental step regardless of *when* or *on what period* that step is performed.  A person, after all, can generate a list on a periodic (including a daily) basis.  Thus, nothing in these claims transforms the claim into patent-eligible subject matter.

Claims 9-11, 27-29, 45-47 and 54-56 add the idea of excluding items of content based on various constraints.  In particular, Claims 9, 27, 45 and 54 are directed to the general idea of excluding (from the personalized lists) items of content based on an (unspecified) constraint.  Claims 10, 28, 46 and 54 specify the constraint used for this exclusion as the number of times the item has been or may be delivered to the user.  And Claims 11, 29, 47 and 56 call for the constraint to be an elapsed time since the last delivery.  Thus *all* of these claims are directed to excluding items from the generated list based on various numerical or temporal conditions.  A person could, of course, *generate* the individualized lists called for in the base claims while taking these conditions into account.  Thus, for example, a person could exclude from the list s/he generated for a particular user any item that had already been delivered to the user or which was delivered in the last 24 hours.  To put it differently, because these claims are simply related to *conditions* with which a *person* could comply while performing the (otherwise abstract) steps recited in the independent claims, they do not transform the claim into patentable subject matter.

Claims 12-14, 30-31 and 48-50 specify that the lists generated in the course of performing the base claim include advertisements (Claims 12 and 48) or various *styles* of advertisement (Claims 13-14, 30-31 and 49-50).  None of these claims transform the nature of the claims to which they are appended. All they do is specify the nature of the item which is added to a list.  But the act of *generating* a list is

1    one that can be performed in the mind or with a pencil and paper regardless of the kind of items that the

2    list contains; a person can just as easily list the Kings of England as the elements in the periodic table.

3    Because the abstract act of *generating* a list is not changed by what goes on it, claims which (like these)

4    specify what goes on the list cannot transform the claim into patent-eligible subject matter.

5            Claims 15, 32 and 51 add the concept of tracking each item delivered to the user.  The act of

6    tracking items which have been delivered is (of course) an action that can be performed by a person in

7    their mind or with pen and paper – indeed, it is something done every day by every FedEx and UPS

8    delivery person.   Thus, these claims cannot *transform* the nature of the claim from which they depend

9    into patent-eligible subject matter.  Indeed, the Court has repeatedly said that steps like these are simply

10   insignificant post-solution activity that cannot render claims patentable. *See Parker*, 437 U.S. at 590

11   ("The notion that post-solution activity, no matter how conventional or obvious in itself, can transform an

12   unpatentable principle into a patentable process exalts form over substance.").

13            Claims 16 and 33 call for the users for whom the lists are created to be people who are using the

14   internet to access web sites.[11]  Nothing about this changes the nature of the *claimed* steps or requires

15   them to be performed with a computer – it simply specifies the *population* for whose benefit the method

16   is being performed.  Indeed, even if these claims did imply the use of an (unclaimed) computer to

17   perform the claimed methods, it would be at most simply an attempt to limit the abstract concept by

18   applying it to a particular technological environment – namely a general-purpose computer.  But the

19   Court has been clear that limiting an otherwise abstract idea in this way does not render it patent eligible.

20   *See Alice*, 134 S. Ct. 2360 ("[N]one of the hardware recited by the system claims offers a meaningful

21   limitation beyond generally linking the use of the [method] to a particular technological environment,

22   that is, implementation via computers."); *see also Accenture*, 728 F.3d at 1345 ("Accenture's attempts to

23   limit the abstract concept to a computer implementation and to a specific industry thus do not provide

24

---

25   [11]  Claim 16 also recites that the items of content are advertisements, as in Claims 12 and 48.  That
     addition does not change the nature of the claims.  Even when viewed as a whole, the combination

26   simply specifies a type of item to be placed on the list for a particular user population.  Indeed, claiming
     an abstract idea in the context of "internet advertising" risks the very type of preemption that motivates

27   the Court's § 101 jurisprudence, by walling off the use of an abstract idea in a broad area of the
     economy. *Alice*, 134 S. Ct. at 2358; *Gottschalk*, 409 U.S. at 67 ("[A]bstract intellectual concepts are not

28   patentable, as they are the basic tools of scientific and technological work.").

1    additional substantive limitations to avoid preempting the abstract idea of system claim 1.").

2        Claims 17, 34, and 52 call for the requirements used in the *prioritization* step to specify the

3    number of times an item is to be delivered to the users.  This, of course, does not change the nature of the

4    claims because it merely specifies a piece of *data* to be used in the prioritization, but does not change the

5    step itself or the fact that prioritization is an abstract idea that can be done in the human mind.

6        Claim 18 is similar in that it calls for the requirements to "specify a time period during which a

7    given number of deliveries of an item of content is to be made" – and because such a time period (like

8    the number of times an item is to be delivered) is simply a piece of *data* to use in the prioritization and

9    not something that transforms the nature of the activity.

10       Claims 19 and 20 are likewise directed to *optimizing* the prioritization step based on various

11   characteristics of the items being ordered – but do not change the fact that *prioritization* itself is an

12   abstract mental step.

13       Finally, Claims 37-38 depend from Claim 36 and call for the use of web and POP servers

14   respectively.  As noted previously, however, calling for the use of generic computer components, to

15   perform an otherwise patentable method does not render the claims patent eligible.  *See Alice*, 134 S. Ct.

16   at 2358 ("Given the ubiquity of computers … [a] wholly generic computer implementation is not

17   generally the sort of 'additional feature' that provides any 'practical assurance that the process is more

18   than a drafting effort designed to monopolize the abstract idea itself.'"); *CyberSource*, 654 F.3d at 1375

19   ("[T]he basic character of a process claim drawn to an abstract idea is not changed by claiming only its

20   performance by computers …."); *Accenture*, 728 F.3d at 1342 (rejecting claims containing "an insurance

21   claim folder, a task library database, a server component, and a task engine" and specifying the

22   interactions between them).

23       As shown above, claims 2-56 of the '268 patent add only generic computer equipment, different

24   types of data and time periods, insignificant extra-solution activity and additional mental steps to the

25   abstract idea recited in Claim 1.  Because *none* of these additional features transform the nature of the

26   claims, the Court should hold all of the claims of the '268 patent invalid as abstract.

27   ///

28   ///

### 3.     The Claims of the '691 Do Not Contain Any Transformative Elements

The '691 patent contains 72 claims of which six (Claims 1, 23, 48, and 70-72) are independent. None of the claims are directed to patentable subject matter.  As discussed previously, Claim 1 of the '691 can be performed entirely in the human mind or with pencil and paper.  The method can be performed without a computer or any other machine and is therefore directed to a *purely* abstract idea. By the same token, there is nothing in Claim 1 which could transform the claim into patent-eligible subject matter under the standards articulated in *Alice*.  Indeed, there is nothing in the claim which could *mitigate* the risk of preempting the basic tools of technical work – because it directly *claims* such a tool.

The other independent claims also lack any such transformative element.  Claims 23 and 48 call for performing essentially the same steps as Claim 1 using nothing more than a handful of either totally unspecified and/or generic computer equipment: a "user interface device" (in Claim 23) and an "input device" (in Claim 48) to obtain the information, a "controller" to receive the information, update the profile and select the program, and a "presentation device" to receive the selected program.  The same is true for independent Claim 72 (which is written in means-plus-function format) because the corresponding structures disclosed in the specification are simply generic, conventional computer components.  "As a result, none of the hardware recited by the system claims offers a meaningful limitation beyond generally linking the use of the [method] to a particular technological environment, that is, implementation via computers."  *Alice*, 134 S. Ct. at 2360.

The two independent claims written in *Beauregard* format (Claims 70 and 71) fare no better because, as the Court found in *Alice*, they "add nothing of substance to the underlying abstract idea."  *Id.* Indeed, to hold the *Beauregard* claims patentable based on their nominal reference to a "computer readable medium" containing unspecified instructions for performing the method would violate *Alice*'s teaching that "[s]tating an abstract idea while adding the words 'apply it' is not enough for patent eligibility."  *Id.* at 2358.

The many dependent claims of the '691 also cannot change the analysis.  Indeed most of the dependent claims simply call for implementing the abstract idea using additional generic pieces of computer hardware – components such as a "database," "memory," a "data storage device," a "controller," a "hub," a "presentation device," a "stand alone device," a "wireless transmission system,"

1    etc.  Those claims (Claims 2-4, 7-9, 11, 14-20, 24-26, 28-29, 32-36, 38-47, 49-54, 56, and 59-67) all fail

2    under *Alice* because they recite conventional computers which perform conventional processing steps

3    (specified at a high level of generality) in order to implement the abstract idea.  *Id.*

4          In addition, the steps recited by these claims are simply insignificant extra-solution activities,

5    namely, *gathering data* to use as inputs to the purportedly novel (and abstract) selection method or

6    *providing or presenting* the program selected by that method.[12]  *See Parker*, 437 U.S. at 590 ("The

7    notion that post-solution activity, no matter how conventional or obvious in itself, can transform an

8    unpatentable principle into a patentable process exalts form over substance."); *In re Bilski*, 545 F.3d at

9    963 ("This court and our predecessor court have frequently stated that adding a data-gathering step to an

10   algorithm is insufficient to convert that algorithm into a patent-eligible process.").

11         A second set of dependent claims simply recite performing the process for "a single user" (as in

12   Claim 5), "a group including the user" (Claim 6), or "a second user" and "second presentation device"

13   (Claims 37, 68 and 69).  But nothing about performing the abstract idea for one or multiple users and/or

14   delivering one or multiple programs to one or multiple (unspecified and generic) presentation devices

15   *transforms* the claim into patent-eligible subject matter.  Instead, it simply constitutes *applying* the

16   abstract idea to multiple people, or multiple times in a row.

17         The remaining dependent claims are slightly less amenable to categorization, but equally lack any

18   transformative element:

19
20
> ➤ Claims 10, 27 and 55 call for transmitting the program "via streaming program segments" and thus simply call for (the extra-solution) step of delivering the selected program using a conventional process.

21
22
23
> ➤ Claim 21 calls for the selected programming to be any one of a wide variety of things like "advertising" or "educational programming" and thus merely calls for different *data content* but does not change the fact that the claims are directed to the abstract manipulation of data.

24
25
> ➤ Claim 22 calls for the program to consist of things like "still frame picture, graphics, textual information" etc., and thus only further demonstrates that the programming can be created by a person using pencil and paper (*i.e.*, it need not be video).

26
> ➤ Claims 12-13, 30-31 and 57-58 call for "generating" the program (either purely in the abstract or using an unspecified and generic "controller") rather than using a pre-

27
28
---

[12] Several of the claims in this group (such as Claims 38 and 49) do not recite *any* steps, but merely call for generic devices which can be used to perform the (extra-solution) steps recited in other claims.

existing program.  Thus, these claims also call only for the creation of data either purely in the abstract (which can be done by a person) or with a generic computer. The claims therefore lack any transformative element.

Once again, and as shown above, Claims 2-72 of the '691 patent add only generic computer equipment, different types of data, insignificant extra-solution activity and additional mental steps to the abstract idea recited in Claim 1.  Because *none* of these additional features *transform* the nature of the claims, the Court should hold all of the claims of the '691 patent invalid as abstract.

## III.  CONCLUSION

*Alice* holds: (1) that neither implementing an abstract idea using conventional computer technology nor limiting it to a particular technological environment results in subject matter eligibility and (2) that the results of the inquiry under § 101 cannot depend on the draftsman's art.  Because, as shown above, the claims of the challenged patents are all directed to abstractions with (at most) generic computer components and minor "draftsman's art" variations, the claims are ineligible under § 101.  The Court should, therefore, find the claims to be invalid.

Dated:  July 24, 2014                                                 DURIE TANGRI LLP


                                                        By:      */s/ Clement S. Roberts*
                                                              CLEMENT S. ROBERTS

                                                              Attorneys for Defendant
                                                              NETFLIX, INC.

DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY /
CASE NO. 3:14-CV-01525-RS & 3:14-CV-01723-RS

1

**CERTIFICATE OF SERVICE**

2        I certify that all counsel of record is being served on July 24, 2014 with a copy of this document

3  via the Court's CM/ECF system.

*/s/ Clement S. Roberts*

4                                                            Clement S. Roberts

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY /
CASE NO. 3:14-CV-01525-RS & 3:14-CV-01723-RS