Russell E. Levine, P.C. (*pro hac vice*)
rlevine@kirkland.com
Paul D. Collier (*pro hac vice*)
pcollier@kirkland.com
James B. Medek (*pro hac vice*)
jmedek@kirkland.com
Greg Polins (*pro hac vice*)
greg.polins@kirkland.com
George William Foster
billy.foster@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

John R. Edwards (S.B.N. 244310)
john.edwards@kirkland.com
Brian W. Lee (S.B.N. 255363)
brian.lee@kirkland.com
Mark D. Fahey (S.B.N. 294551)
mark.fahey@kirkland.com
KIRKLAND & ELLIS LLP
3330 Hillview Avenue
Palo Alto, California  94304
Telephone: (650) 859-7000
Facsimile: (650) 859-7500

Attorneys for Plaintiffs
OpenTV, Inc. and Nagra France SAS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| OPENTV, INC., <br>                 Plaintiff, <br>     v. <br> NETFLIX, INC., <br>                 Defendant. | Case No. 3:14-cv-01525-RS <br> Case No. 3:14-cv-01723-RS <br><br> **PLAINTIFFS OPENTV INC. AND NAGRA FRANCE SAS'S MEMORANDUM IN OPPOSITION TO DEFENDANT NETFLIX, INC.'S MOTION FOR SUMMARY JUDGMENT OF LACK OF PATENTABLE SUBJECT MATTER AS TO U.S. PATENTS 7,055,169, 7,305,691, and 8,332,268** |
| OPENTV, INC.  and NAGRA FRANCE SAS, <br>                 Plaintiffs, <br>     v. <br> NETFLIX, INC., <br>                 Defendant. | Date:     November 6, 2014 <br> Time:    1:30 p.m. <br> Ctrm:    3, 17th Floor <br> Judge:  Honorable Richard Seeborg |

## TABLE OF CONTENTS

**Page**

I.    **Introduction and Summary of Arguments** ........................................................................1

II.   **Legal Standard** ........................................................................................................................3

III.  **Argument** ...................................................................................................................................3

    A.   Genuine Issues of Underlying Material Fact Preclude Summary Judgment ................3

    B.   Netflix Fails to Show that the Claims of the '169 Patent are Not Patent Eligible .........5

        1.   Claims of the '169 Patent are Not Directed to an Abstract Idea .......................7

        2.   Claims of the '169 Patent are Inventive in the Computer Arts .......................10

    C.   Netflix Fails to Show that the Claims of the '268 Patent are Not Patent Eligible .......11

        1.   Claims of the '268 Patent are Not Directed to an Abstract Idea .....................13

        2.   Claims of the '268 Patent are Inventive in the Computer Arts .......................17

    D.   Netflix Fails to Show that the Claims of the '691 Patent are Not Patent Eligible .......18

        1.   Claims of the '691 Patent are Not Directed to an Abstract Idea .....................20

        2.   Claims of the '691 Patent are Inventive in the Computer Arts .......................24

IV.  **Conclusion** ..............................................................................................................................**25**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ........................................................................................ passim

5

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ..................................................................................................3

6

7

*Diamond v. Diehr,*
   450 U.S. 175 (1981) ..................................................................................1, 6, 12, 19

8

*France Telecom S.A. v. Marvell Semiconductor Inc.,*
   No. 12-cv-04967-WHO, 2014 WL 1478850 (N.D. Cal. Apr. 14, 2014) ................ passim

9

10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
   132 S. Ct. 1289 (2012) ...........................................................................................4, 5

11

*Parker v. Flook,*
   437 U.S. 584 (1978) ..................................................................................................4

12

13

*TQP Dev., LLC v. Intuit Inc.,*
   No. 12-cv-180-WCB, 2014 WL 651935 (E.D. Tex. Feb. 19, 2014)........................6

14

**Statutes**

15

35 U.S.C. § 101 .............................................................................................................3

16

35 U.S.C. § 282 .............................................................................................................3

17

**Rules**

18

Fed. R. Civ. P. 56..........................................................................................................3

19

20

21

22

23

24

25

26

27

28

I.      INTRODUCTION AND SUMMARY OF ARGUMENTS

OpenTV respectfully submits this memorandum in opposition to Netflix's motion for summary judgment.  Netflix's motion should be denied.

The patents-at-issue, U.S. Patent Nos. 7,055,169, 7,305,691 and 8,332,268, are not directed to abstract ideas.  Instead they are directed to specific, patent-eligible implementations of content delivery systems that innovate over conventional systems.  The '169 Patent improves conventional content delivery systems by giving content creators the ability to better indicate how content is to be handled by the content delivery system and the end user device.  *See* Declaration of Nathaniel Polish, Ph.D. ("Dr. Polish Decl." hereinafter) at ¶¶ 25, 27, 36-39.  The '268 Patent improves conventional content delivery systems by making more efficient the scheduling of content delivery. *Id.* at ¶¶ 50, 52, 61-64.  The '691 Patent improves conventional content delivery systems by making content targeted to users outside their home more relevant.  *Id.* at ¶¶ 75, 77, 86-89.  Such innovations over existing conventional systems are patentable subject matter.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014) (the Supreme Court noted, "In *Diehr*,… we held that a computer-implemented process for curing rubber was patent eligible … the claims in *Diehr* were patent eligible because they improved an existing technological process") (citing to *Diamond v. Diehr*, 450 U. S. 175 (1981)).

Netflix wrongly oversimplifies and mischaracterizes the patents-at-issue, in order to support its allegation that the claims of the patents-at-issue are directed to abstract ideas.  Moreover, Netflix ignores and disregards concrete claim limitations related to the inventive aspects of the claims.  *See* Dr. Polish Decl. at ¶¶ 30, 36-38, 55, 61-63, 80, 86-88.  For example, Netflix's attempt to characterize the claims of the '169 Patent as "ensuring that the necessary resources are available before commencing a presentation that requires those resources" ignores a fundamental inventive concept of the '169 Patent: the claims actually require that less than all of the necessary resources be available before initiating a presentation.  *Id.* at ¶ 30.  Netflix similarly attempts to mischaracterize the claims of the '268 Patent, oversimplifying its 56 claims as directed to simply "using information about users to customize a list of content for delivery," and ignoring the fact that the claims are limited to specific implementations that forecast user behaviors and generate two

specific types of lists in order to schedule content delivery. *Id.* at ¶ 55. Netflix continues its mischaracterization with its oversimplification of the claims of the '691 Patent, arguing that it should be reduced merely to "selecting an item of special interest to a user based on a user profile updated with information about the user's actions and location." However, Netflix misses the nature of the invention of the '691 Patent. For example, Netflix ignores the fact that the claims are limited to implementations that capture additional information beyond information about a user's action and location and that make inferences or determinations about a user based on such information and other pre-existing user profile information in order to select targeted content for a user outside of the home. *Id.* at ¶ 80. Netflix's characterizations hide the true nature and scope of the claims in an attempt to mask the fact that the claims are much more nuanced and directed to specific implementations that innovate over conventional systems.

In addition, none of the claims of the patents-at-issue are directed to basic tools of scientific and technological work or a building block of human ingenuity, which are the hallmarks of a patent-ineligible concept. *Id.* at ¶¶ 31, 32, 56, 57, 81, 82. Rather, the numerous claims of the patents-at-issue do not implicate — and are easily distinguished from — the concerns of pre-emption that underlie the Supreme Court's jurisprudence on patentable subject matter. *See Alice*, 134 S. Ct. at 2354 ("Laws of nature, natural phenomena, and abstract ideas are not patentable.… We have described the concern that drives this exclusionary principle as one of pre-emption.… Laws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work.… Monopolization of those tools through the grant of a patent might tend to impede innovation … Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more") (internal citations and quotes omitted).

Furthermore, none of the claims of the patents-at-issue are directed to a mathematical formula, an algorithm for solving a given type of a mathematical problem, or a fundamental economic practice long prevalent in our system of commerce. *See* Dr. Polish Decl. at ¶¶ 33, 58, 83. Netflix does not dispute this point in its motion. Hence, none of the claims of the patents-in-suit fall into one of the buckets that the Supreme Court has found to cover patent ineligible abstract ideas.

1    *See Alice*, 134 S. Ct. at 2355-56.

2         Also, contrary to Netflix's assertions, no one of ordinary skill in the art would perceive any

3    of the claims of the patents-at-issue as covering mental or pen and paper implementations.  *See* Dr.

4    Polish Decl. at ¶¶ 34, 59, 84.  This factual dispute, alone, should preclude summary judgment.

5         In short, Netflix's drive-by assertions that the claims-at-issue are directed to an abstract idea

6    are simply incorrect.  Netflix fails to present clear and convincing evidence that all 151 claims of

7    the patents-at-issue are not patentable, and at the very least, Netflix's assertions raise disputed

8    issues of material facts.

9    **II.     LEGAL STANDARD**

10        Summary judgment should be granted only where "the pleadings, the discovery and

11   disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

12   fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In

13   deciding a summary judgment motion, the Court must view the evidence in the light most favorable

14   to the non-moving party and draw all justifiable inferences in its favor.  *See Anderson v. Liberty*

15   *Lobby, Inc.*, 477 U.S. 242, 255 (1986).

16        The Patent Act explicitly states, "A patent shall be presumed valid."  35 U.S.C. § 282.  "Any

17   attack on an issued patent based on a challenge to the eligibility of the subject matter requires a high

18   level of proof.  A moving party seeking to invalidate a patent at summary judgment must submit

19   such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find

20   otherwise."  *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2014

21   WL 1478850, at *2 (N.D. Cal. Apr. 14, 2014) (internal quotes and citation omitted).

22   **III.    ARGUMENT**

23        **A.     Genuine Issues of Underlying Material Fact Preclude Summary Judgment**

24        Although a determination of whether a claim is patent eligible under 35 U.S.C. § 101 is

25   ultimately a legal issue, the analysis is necessarily based on underlying facts, which (as is in this

26   case) can be in dispute.  *See France Telecom,* 2014 WL 1478850, at *3.  This is not surprising

27   given that the "line between a patentable 'process' and an unpatentable 'principle' is not always

28   clear."  *Parker v. Flook*, 437 U.S. 584, 589 (1978).

Section 101 of the Patent Act defines the subject matter that is eligible for patent protection. It provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. While Section 101 implicitly excludes laws of nature, natural phenomena, and abstract ideas from the scope of patentable subject matter, "[a]pplications of such concepts to a new and useful end … remain eligible for patent protection." *Alice*, 134 S. Ct. at 2354 (internal quotes and citation omitted).

In *Mayo* and recently reaffirmed in *Alice*, the Supreme Court laid out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id. at* 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012)). In the first step, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts" (*i.e.*, laws of nature, natural phenomena, and abstract ideas). *Alice*, 134 S. Ct. at 2355. If the court determines that a claim at issue is directed to a patent-ineligible concept, the court must then determine whether there is an inventive concept in the claim to "transform the nature of the claim into a patent-eligible application" of the patent-ineligible concept. *Id.* The Supreme Court has "described step two of this analysis as a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotes and citation omitted). Such determinations are made on a claim-by-claim basis. *Id.* at 2360 (different claims of the same patent are considered separately).

The underlying basis for this framework is the concern for pre-emption. Given that "[l]aws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work," the Supreme Court has chastened attempts to patent and preempt the "future use of these building blocks of human ingenuity." *Id.* at 2354 (internal quotes and citations omitted). But the Supreme Court has also cautioned that given "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," the inquiry into whether a patent claim preempts a law of nature, a natural phenomenon, or an abstract idea must be

considered carefully.  *See Mayo*, 132 S. Ct. at 1293; *see also Alice*, 134 S. Ct. at 2354 ("[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law.").[1]

As explained in this memorandum and by Dr. Polish, one of ordinary skill in the art would recognize that the claims of the patents-at-issue are not directed at an abstract idea, but to specific implementations that advance the computer arts by innovating over conventional content delivery systems.  Furthermore, as explained in the discussion of each of the patents below, no one of ordinary skill in the art would perceive the claims of the patents-at-issue as covering abstract ideas that can be performed mentally or with a pen and paper as alleged by Netflix.  *See infra* sections **B.1.c**, **C.1.c**, **D.1.c**; Dr. Polish Decl. at ¶¶ 34, 59, 84.  These factual disputes create sufficiently material and genuine issues of fact to foreclose summary judgment.  *See France Telecom,* 2014 WL 1478850, at *11 ("While the defendants assert that the encryption and decryption process can be performed in the human mind or with pencil and paper, TQP has offered evidence to the contrary, in the form of an expert's declaration.… That factual dispute by itself is enough to foreclose the entry of summary judgment in the defendants' favor on the present record.") (quoting Fed. Cir. Judge J. Bryson in *TQP Dev., LLC v. Intuit Inc.*, No. 12-cv-180-WCB, 2014 WL 651935, at *5 (E.D. Tex. Feb. 19, 2014)).

**B.     Netflix Fails to Show that the Claims of the '169 Patent are Not Patent Eligible**

The '169 Patent claims patent-eligible subject matter.  The claims of the '169 Patent recite specific and concrete features and steps that innovate over conventional content delivery systems. Such innovations over existing conventional systems are patentable subject matter.  *See Alice,* 134 S. Ct. at 2358 (the Supreme Court noted that "the claims in *Diehr* were patent eligible because they improved an existing technological process") (citing to *Diehr*, 450 U. S. 175).

Conventional content delivery systems, such as those utilizing the Advanced Television System Committee (ATSC) Digital Television Application Software Environment (DASE) or Digital Video Broadcasting Multimedia Home Platform (DVB-MHP) standards were deficient

---

[1]   Although many claim terms at issue in this case will likely be construed according to their plain and ordinary meanings, the claim construction process will inform the Court and the parties regarding the scope of the inventions at issue in this case.  A discussion of patent eligibility lacking that process, however, may result in positions that resemble ships passing in the night.

1    because they lacked the ability for content creators to specify which of the necessary resources of a

2    presentation are more pertinent.  *See* '169 at 47:24-44, 48:13-18; *see also* Dr. Polish Decl. at ¶¶ 16,

3    23-24.  As a consequence, content creators had less control over the end user's experience with the

4    presentation, and conventional systems were not very efficient at delivering presentations to end

5    users.  *Id.*

6           To address these deficiencies, the '169 Patent discloses an innovation of introducing

7    prerequisite directives into content delivery systems.  *See* Dr. Polish Decl. at ¶¶ 25, 36-38.  A

8    directive is a declaration or other statement that is formed using a declarative computer language

9    (*e.g.,* HTML, Javascript, CSS, *etc.*), which allows one to "specify what you want, and not how to

10   get it."  *See* '169 at 46:56-47:10; *see also* Dr. Polish Decl. at ¶ 19.  A prerequisite directive is a

11   specific type of directive for specifying that a "particular subset of resources required for [a]

12   presentation" needs to be obtained prior to the presentation being initiated.  *See* '169 at 2:39-47,

13   21:8-22:10; *see also* Dr. Polish Decl. at ¶ 21.  For example, a prerequisite directive in the form of

14   "<META name='prerequisite' content='http://www.cnn.com/background.mpg'>" indicates that "no

15   rendering for the page may occur prior to acquiring 'background.mpg'."  *See* '169 at 21:16-20; *see*

16   *also* Dr. Polish Decl. at ¶ 21.

17          Prerequisite directives allow content creators to better control the process of rendering

18   content on end-user devices.  *See* '169 at 21:8-52, 47:24-34; *see also* Dr. Polish Decl. at ¶ 22.  The

19   '169 Patent explains that a "content creator often wishes to use multiple resources in constructing a

20   scene or presentation and may consider the acquisition of a subset of these resources to be essential

21   before displaying to the viewer" because the content creator "may prefer that the old scene should

22   continue to be displayed until at least the essential resources have been received and decoded."  *Id.*

23   The system of the '169 Patent allows a content creator to use one or more prerequisite directives to

24   designate that a subset of the necessary resources of a presentation as being more pertinent in order

25   to prevent rendering of the presentation until the designated subset of necessary resources has been

26   acquired by the end-user rendering device.  *Id.*

27          Prerequisite directives also allow content creators to indicate to the content delivery system

28   that certain resources are more pertinent among the necessary resources of a presentation and

therefore are good candidates for pre-fetching and/or caching.  *See* '169 at 2:39-47, 26:38-56, 47:38-44, 47:57-48:3; *see also* Dr. Polish Decl. at ¶ 23.  With intelligent pre-fetching of resources, the '169 Patent explains that "remarkable performance improvements may be possible." *Id.*

The '169 Patent's introduction of prerequisite directives into content delivery systems are concrete innovations over conventional systems because, among other things, they advance the computer arts by (a) allowing content creators to articulate (using a declarative computer language) which of the necessary resources in a presentation are more pertinent for providing a better end-user experience and (b) allowing for the pre-fetching and storage in computer caches of such more pertinent resources to improve the delivery of presentations to end users.  *See* Polish Decl. at ¶ 25.

### 1.   Claims of the '169 Patent are Not Directed to an Abstract Idea

### a.   Netflix's Characterization of the Claims is Wrong

Contrary to Netflix's assertions, the claims of the '169 Patent are not directed to an abstract idea.  Netflix's characterization of the claims as being directed to an abstract idea of "ensuring that the necessary resources are available before commencing a presentation that requires those resources" can only be achieved by ignoring concrete claim limitations and inappropriately oversimplifying the claims.

For example, claim 1 of the '169 Patent is reproduced below:

1. A method comprising:
   [a] receiving one or more directives, wherein said directives are indicative of an audio, video and/or graphic presentation which requires a set of resources;
   [b] determining whether said one or more directives includes a prerequisite directive which indicates that acquisition of a subset of said set of resources is a prerequisite for initiating the presentation;
   [c] initiating said presentation, in response to determining the one or more directives do not include said prerequisite directive; and
   [d] prohibiting initiation of said presentation until said subset of resources are acquired, in response to determining the one or more directives include said prerequisite directive.

Netflix's assertions that the claims are directed to an abstract idea of "ensuring that the necessary resources are available before commencing a presentation that requires those resources" ignore the fact that while the claims recite a "presentation which requires a set of resources," the claims in fact only require that "a subset of said set of [required] resources" be available before

commencing a presentation.  *See* '169 at claim 1, steps [a], [b], and [d] (reproduced above); *see also* Dr. Polish Decl. at ¶ 30.  Hence, contrary to Netflix's assertions, only a subset of the necessary resources that have been designated by one or more "prerequisite directives" need to be available before commencing a presentation.  *Id.*  Netflix's characterization wholly ignores these concrete aspects of the claims of the '169 Patent, which as discussed in the next section **III.B.2** below, provide for certain inventive aspects of the claims of the '169 Patent.  *See also* Dr. Polish Decl. at ¶¶ 36-39.  Hence, Netflix's characterization of the claims is unjustified, and the claims of the '169 Patent are simply not directed at "ensuring that the necessary resources are available before commencing a presentation that requires those resources" as alleged by Netflix.

<p style="text-align:center;">b. **The Claims Do Not Implicate Concerns Over Abstract Ideas**</p>

The claims of the '169 Patent are not directed to a basic tool of scientific and technological work or a building block of human ingenuity, which are the distinctive qualities of patent-ineligible laws of nature, natural phenomena, and abstract ideas.  *See Alice*, 134 S. Ct. at 2354 ("Laws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work.… Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more.") (internal citations and quotes omitted).  Each of the claims of the '169 Patent requires a "prerequisite directive," which limits the claims to the use of specific types of computer language expressions.  *See* Dr. Polish Decl. at ¶ 31.  As discussed above, "directives" are declarations or other statements that are formed using a declarative computer language (*e.g.,* HTML, Javascript, CSS, *etc.*), which allows one to "specify what you want, and not how to get it." *See* '169 at 46:56-47:10; *see also* Dr. Polish Decl. at ¶ 31.  Additionally, a "prerequisite directive" is further limited to directives that specify that one or more of a required resource is a "prerequisite for initiating a presentation."  *See* '169 at claim 1, step [b] (reproduced above); *see also* Dr. Polish Decl. at ¶ 31.  As explained by Dr. Polish, given that each of the claims requires a "prerequisite directive," which is limited to a specific type of expression of a declaratory computer language, no one of ordinary skill in the art would perceive the claims of the '169 Patent as being directed to something as broad and fundamental as a basic building block of computer science, let alone a basic

1  tool of scientific and technological work or a building block of human ingenuity.  *See* Dr. Polish

2  Decl. at ¶ 31.

3          Additionally, the claims of the '169 Patent do not preempt all human endeavors in

4  embodying the idea of "ensuring that the necessary resources are available before commencing a

5  presentation that requires those resources" as alleged by Netflix.  *See* Dr. Polish Decl. at ¶ 32.  As

6  explained by Dr. Polish, given that the claims of the '169 Patent are limited to specific

7  implementations that utilize a "prerequisite directive" (a specific type of expression of a particular

8  type of computer language) in addition to satisfying the remaining limitations of the claims, one of

9  ordinary skill in the art would not perceive the claims of the '169 Patent as preempting all possible

10  ways of embodying the idea of "ensuring that the necessary resources are available before

11  commencing a presentation that requires those resources." *Id.*  Accordingly, the claims of the '169

12  Patent do not implicate — and are distinguished from — the concerns of pre-emption that underlie

13  the Supreme Court's jurisprudence in excluding abstract ideas from patentable subject matter.  *See*

14  *Alice*, 134 S. Ct. at 2354 ("Laws of nature, natural phenomena, and abstract ideas are not

15  patentable.… We have described the concern that drives this exclusionary principle as one of

16  pre-emption.… We have repeatedly emphasized this concern that patent law not inhibit further

17  discovery by improperly typing up the future use of these building blocks of human ingenuity.")

18  (internal citations and quotes omitted).

19                    **c.       The Claims are Not Directed at a Mental Process**

20          Also, contrary to Netflix's assertions, no one of ordinary skill in the art would perceive the

21  claims of the '169 Patent as covering mental thoughts or pen and paper implementations.  *See* Dr.

22  Polish Decl. at ¶ 34.  The claims of the '169 Patent require the use of "directives," which, as

23  discussed above, are declarations formed using a declarative computer language.  *Id.*  As explained

24  by Dr. Polish, such computer language expressions are meant to be parsed and understood by a

25  computer.  *Id.*  Hence, one of ordinary skill in the art would not perceive the claims of the '169

26  Patent as being directed to human activities.  *Id.*  As Dr. Polish further explained, nothing in the

27  claims or the specification of the '169 Patent suggests that the claims would cover human activities

28  in which humans would receive and process directives written in a computer language.  *Id.*  Rather,

as explained by Dr. Polish, given that the claims of the '169 Patent are directed to innovations over conventional content delivery systems, one of ordinary skill in the art would understand that the claims are directed to specific implementations of content delivery systems and not to human activities as alleged by Netflix.  *Id.*  This factual difference in the parties' position alone should be sufficient to preclude summary judgment.  *See France Telecom*, 2014 WL 1478850, at *11 (recognizing that an expert declaration disputing the defendant's assertions that the patent claims can be performed in the human mind or with a pen and paper is sufficient to raise a genuine issue of material fact to foreclose summary judgment).

For all of the foregoing reasons, the claims of the '169 are not directed to an abstract idea.

## 2.    Claims of the '169 Patent are Inventive in the Computer Arts

The claims of '169 Patent recite inventive concepts that innovate over conventional content delivery systems, making the claims patent eligible.  *See* Dr. Polish Decl. at ¶¶ 16, 36-39; *see also Alice*, 134 S. Ct. at 2355 (noting that a claim is patent eligible even when directed to a patent ineligible concept such as an abstract idea if the claim includes an inventive concept — "*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'").

For example, the '169 Patent discloses the innovation of utilizing one or more "prerequisite directives" to specify which among the necessary resources of a presentation are more pertinent and prohibiting the initiation of the presentation until those more pertinent resources are acquired by the user's device.  *See* '169 at 2:39-48, 47:23-48:11; *see also* Dr. Polish Decl. at ¶ 37.  This innovation is captured in all of the claims of the '169 Patent such as, for example, in claim 1, steps [b] and [d] (reproduced above).  *Id.*  As explained by Dr. Polish, this innovation allows a content creator to better control how an end user will experience a presentation.  *See* Dr. Polish Decl. at ¶ 37.  Without the introduction of a "prerequisite directive," a conventional system had basically two options for initiating a presentation; the system could either (1) initiate the presentation as soon as possible, perhaps after it had acquired the first resource, or (2) after it had received all of the resources.  *Id.*  But as further explained by Dr. Polish, by allowing a content creator to specify which of the necessary resources are more pertinent with one or more "prerequisite directives" and requiring all

1    of those more pertinent resources to be acquired before initiating the presentation, the system of the

2    '169 Patent provides the content creator control over exactly when a presentation is initiated. *Id.*

3    For example, a content creator can designate 3 specific resources among 5 of the required resources

4    with one or more "prerequisite directives" to ensure that the presentation will not be initiated before

5    those 3 specific resources have been acquired. *Id.*

6        Additionally, the '169 Patent discloses that, by allowing content creators to designate with

7    one or more "prerequisite directives" which of the necessary resources of a presentation are more

8    pertinent, a content delivery system is able to more efficiently deliver the presentation to end users

9    by pre-fetching and/or caching the more pertinent content. *See* '169 at 26:38-56, 47:34-48:11; Dr.

10    Polish Decl. at ¶ 38. This innovation is captured in all of the claims of the '169 Patent such as, for

11    example, in claim 1, step [b] (reproduced above). *Id.* As explained by Dr. Polish, "prerequisite

12    directives" allow content creators to indicate to a content delivery system, for example, which of the

13    necessary resources are immediately required. *See* Dr. Polish Decl. at ¶ 38. By allowing content

14    creators to provide that information, a content delivery system can prioritize the pre-fetching or

15    caching of the subset of necessary resources that are immediately needed in order to more

16    efficiently make use of its facilities to deliver presentations to the end users. *Id.*

17        Further, as noted by Dr. Polish, the combination of the aforementioned innovations is also

18    an innovation in itself because holistically, they advance the compute arts by improving the overall

19    effectiveness of content delivery systems. *See* Dr. Polish Decl. at ¶ 39.

20        Accordingly, as shown above, the claims of the '169 are directed to specific innovations

21    over conventional systems and are patent eligible.

22      **C.**      **Netflix Fails to Show that the Claims of the '268 Patent are Not Patent Eligible**

23        The '268 Patent claims patent-eligible subject matter. The claims of the '268 Patent recite

24    specific and concrete features and steps that innovate over conventional content delivery systems.

25    Such innovations over existing conventional systems are patentable subject matter. *See Alice,* 134

26    S. Ct. at 2358 (the Supreme Court noted that "the claims in *Diehr* were patent eligible because they

27    improved an existing technological process") (citing to *Diehr*, 450 U. S. 175).

28        Conventional content delivery systems (*e.g.*, advertising delivery systems) would schedule

1   delivery of content (*e.g.,* advertisements) to its users in order to satisfy a priority of the system such

2   as, for example, an objective to fulfill contracts entered into with advertisers to deliver a certain

3   number of advertisements to certain number of users. *See* '268 at 1:20-41. But those conventional

4   systems did not specifically factor in individual user behaviors when scheduling content delivery.

5   *See* '268 at 1:30-41; *see also* Dr. Polish Decl. at ¶¶ 49, 61. For example, when scheduling delivery

6   of advertising content, such conventional advertising systems did not factor in specifically for each

7   user, when the user would be logged in again to be available to receive content from the system or

8   how long the user would be logged in. *Id.* Rather, such conventional systems pre-scheduled

9   delivery of content using conservative estimates for such factors that varied across users. *Id.* As a

10  consequence, conventional content delivery systems were not very efficient at properly scheduling

11  content delivery and fulfilling its objectives such as, for example, fulfilling advertising contracts.

12  *Id.*

13          To address these issues, the '268 Patent discloses several innovations that improve upon

14  conventional content delivery systems. *See* Dr. Polish Decl. at ¶¶ 50, 61-64. First, the '268 Patent

15  discloses forecasting future user behaviors (*e.g.* expected values relating to when a user is likely to

16  be logged in again and for how long) based on statistical analysis of prior user behaviors in order to

17  schedule delivery of content. *See* '268 at 6:33-48; *see also* Dr. Polish Decl. at ¶¶ 44-46, 62. By

18  forecasting user behaviors relevant to content delivery, the '268 Patent discloses that scheduling of

19  content delivery can be more properly based on how each individual user is expected to interact

20  with the content delivery system rather than on a generalized conservative forecast that is applied

21  across all users. *See* Dr. Polish Decl. at ¶ 62.

22          Additionally, the '268 Patent discloses the innovation of initially generating a master

23  delivery plan and then subsequently generating an individual content delivery list in order to more

24  effectively schedule delivery of content. *See* '268 at 5:25-64; *see also* Dr. Polish Decl. at ¶ 47, 48,

25  63. Initially, a master delivery plan is generated based on the forecasted expected values of user

26  behaviors relating to multiple users (*e.g.,* such as the expected times when users will be logged in).

27  *Id.* By generating a master plan based on expected values relating to multiple users, the '268 Patent

28  is able to better take into consideration  a priority of the content delivery system itself such as, for

example, the need to satisfy the delivery requirements of advertising contracts entered into with advertisers. *Id.* Subsequently, when a user actually logs in and becomes available to receive content being scheduled, an individual content delivery list is dynamically generated for the user based on the master delivery plan. *Id.* By dynamically generating an individual list for each user on login, content can be scheduled in a manner that is tailored for each user while maintaining the overall priority of the content delivery service that is reflected in the master delivery plan. *Id.*

The innovations relating to the scheduling of content delivery disclosed in the '268 Patent of forecasting a user behavior relevant to scheduling content delivery, generating a master delivery plan based on forecasted user behaviors relating to multiple users and a priority of the content delivery system, and dynamically generating an individual list for scheduling content delivery when a user logs in and becomes available to receive content being scheduled are concrete improvements upon conventional content distribution systems because, among other things, they advance the computer arts by allowing for more efficient scheduling of content delivery to users, as noted above. *See* Dr. Polish Decl. at ¶ 50.

### 1.    Claims of the '268 Patent are Not Directed to an Abstract Idea

#### a.    Netflix's Characterization of the Claims is Wrong

Contrary to Netflix's assertions, the claims of the '268 Patent are not directed to an abstract idea. Netflix's characterization of the claims of the '268 Patent as being directed to an abstract idea of "using information about users to customize a list of content for delivery" can only be achieved by ignoring concrete claim limitations and inappropriately oversimplifying the claims.

For example, claim 1 of the '268 Patent is reproduced below:

1. A method of scheduling delivery of multiple items of content selectively to a plurality of online users, comprising:
    [a] determining expected values relating to each user being online to access information over the Internet during a given time period;
    [b] generating an ordered list of the items of content to be selectively delivered to the users based on the expected values, said ordered list being prioritized to meet delivery requirements associated with said items of content; and
    [c] generating an individual list of items of content to be delivered to user based on the ordered list, wherein said individual list is dynamically generated for each user on user login.

In order to arrive at Netflix's characterization of the claims of the '268 Patent as an abstract idea of "using information about users to customize a list of content for delivery," the claims would have to be overly simplified in an exaggerated manner. *See* Dr. Polish Decl. at ¶ 55. For example, with respect to claim 1 (reproduced above), the entirety of step [a] would need to be simplified as merely obtaining information about users and steps [b]-[c] would need to be simplified as merely using the information to customize a list of content for delivery. *Id.* But such a simplification ignores the fact that the claims of the '268 Patent are not directed at scheduling delivery of content based on just any information about users, but based on "determining expected values relating to each user," where "expected values" are forecasts of user behaviors such as, for example, when users are likely to be "online to access information over the Internet during a given time period" as recited in claim 1. *See* '268 at 6:33-48; *see also* Dr. Polish Decl. at ¶ 55. Additionally, the claims of the '268 Patent do not require merely customizing any list of content for delivery, but requires "generating an ordered [master] list" based "on the [determined] expected values" and prioritizing the list in order to meet "delivery requirements associated with said items of content" such as, for example, the need of an advertising delivery system to satisfy its advertising contracts. *See* '268 at 5:25-57, 6:33-48; *see also* Dr. Polish Decl. at ¶ 55. Furthermore, the claims of the '268 Patent require generating an "individual list of items of content" for delivery based on the "ordered [master] list" when a user logs in and becomes available to access the content being scheduled. *See* '268 at 5:59-6:20; *see also* Dr. Polish Decl. at ¶ 55. Netflix's characterization wholly ignores these concrete aspects of the claims of the '268 Patent, which as discussed in the next section **III.B.3** below, provide for certain inventive aspects of the claims of the '268 Patent. *See also* Dr. Polish Decl. at ¶¶ 61-64. Hence, Netflix's characterization of the claims is unjustified, and the claims of the '268 Patent are not directed simply at "using information about users to customize a list of content for delivery" as alleged by Netflix.

<div align="center"><b>b.   The Claims Do Not Implicate Concerns Over Abstract Ideas</b></div>

The claims of the '268 Patent are not directed to a basic tool of scientific and technological work or a building block of human ingenuity, which are the distinctive qualities of patent-ineligible laws of nature, natural phenomena, and abstract ideas. *See Alice*, 134 S. Ct. at 2354 ("Laws of

nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work.… Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more.") (internal citations and quotes omitted).  Each of the claims of the '268 Patent requires "determining expected values" that forecast human behaviors such as, for example, when users are likely to be "online to access information over the Internet during a given time period" as recited in claim 1.  *See* '268 at 6:33-48; *see also* Dr. Polish Decl. at ¶ 56.  Additionally, as discussed above, the claims of the '268 Patent require generating two lists in order to schedule delivery of content to users; (1) an "ordered [master] list" based on the determined "expected values" and a priority of the content delivery system, and (2) an "individual list" when a user logs in and becomes available to receive the content.  *See* '268 at 5:25-6:48; *see also* Dr. Polish Decl. at ¶ 55.  As explained by Dr. Polish, given that the claims of the '268 Patent are limited to specific implementations that determine such "expected values" and that generate the two types of lists required in the claims, no one of ordinary skill in the art would perceive the claims of the '268 Patent as being directed to something as broad and fundamental as a basic building block of computer science, let alone a basic tool of scientific and technological work or a building block of human ingenuity.  *See* Dr. Polish Decl. at ¶ 56.

Additionally, the claims of the '268 Patent do not preempt all human endeavors in embodying the idea of "using information about users to customize a list of content for delivery" as alleged by Netflix.  *See* Dr. Polish Decl. at ¶ 57.  As explained by Dr. Polish, given that the claims of the '268 Patent are limited to specific implementations that forecast "expected values," generate an "ordered [master] list," generate an "individual list," and satisfy the remaining limitations of the claims, one of ordinary skill in the art would not perceive the claims of the '268 Patent as preempting all possible ways of embodying the idea of "using information about users to customize a list of content for delivery."  *Id.*  Accordingly, the claims of the '268 Patent do not implicate — and are distinguished from — the concerns of pre-emption that underlie the Supreme Court's jurisprudence in excluding abstract ideas from patentable subject matter.  *See Alice*, 134 S. Ct. at 2354 ("Laws of nature, natural phenomena, and abstract ideas are not patentable.… We have

1  described the concern that drives this exclusionary principle as one of pre-emption.… We have

2  repeatedly emphasized this concern that patent law not inhibit further discovery by improperly

3  typing up the future use of these building blocks of human ingenuity.") (internal citations and

4  quotes omitted).

### c.     The Claims are Not Directed at a Mental Process

6          Also, contrary to Netflix's assertions, no one of ordinary skill in the art would perceive the

7  claims of the '268 Patent as covering mental thoughts or pen and paper implementations.  *See* Dr.

8  Polish Decl. at ¶ 59.  As explained by Dr. Polish, the limitations recited in the claims of the '268

9  Patent reflect that the claims are directed at content delivery systems.  *Id.*  For example, with

10  respect to claim 1, as further explained by Dr. Polish, the claim terms "each user being online to

11  access information over the Internet during a given time period," "generating an ordered list of

12  items of content to be selectively delivered to the users," and "individual list is dynamically

13  generated for each user on user login" would indicate to one of ordinary skill in the art, especially in

14  light of the specification, that the claims would be implemented by a system that employs the

15  Internet and performs actions when a user logs in and becomes available to receive scheduled

16  content on the Internet.  *Id.*  Hence, one of ordinary skill in the art would not perceive the claims of

17  the '268 Patent as being directed to human activities.  *Id.*  As Dr. Polish explained, nothing in the

18  claims or the specification of the '268 Patent suggests that the claims would cover human activities

19  in which humans monitor user logins and perform actions as a result of detecting user logins.  *Id.*

20  Rather, as explained by Dr. Polish, given that the claims of the '268 Patent are directed to

21  innovations over conventional content delivery systems, one of ordinary skill in the art would

22  understand that the claims are directed to specific implementations of content delivery systems and

23  not to human activities as alleged by Netflix.  *Id.*  This factual difference in the parties' position

24  alone should be sufficient to preclude summary judgment.  *See France Telecom*, 2014 WL

25  1478850, at *11 (recognizing that an expert declaration disputing the defendant's assertions that the

26  patent claims can be performed in the human mind or with a pen and paper is sufficient to raise a

27  genuine issue of material fact to foreclose summary judgment).

28          For all of the foregoing reasons, the claims of the '268 are not directed to an abstract idea.

MOTION FOR SUMMARY JUDGMENT          16                          3:14-cv-01525-RS

**2.      Claims of the '268 Patent are Inventive in the Computer Arts**

The claims of '268 Patent recite inventive concepts that innovate over conventional content delivery systems, making the claims patent eligible. *See* Dr. Polish Decl. at ¶¶ 61-64; *see also Alice*, 134 S. Ct. at 2355 (noting that a claim is patent eligible even when directed to a patent ineligible concept such as an abstract idea if the claim includes an inventive concept — "*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'").

For example, the '268 Patent discloses the innovation of forecasting "expected values" of future user behaviors based on statistical analysis of prior user behaviors in order to schedule delivery of content. *See* '268 at 6:33-48; *see also* Dr. Polish Decl. ¶ 62. This innovation is captured in all of the claims of the '268 Patent such as, for example, in claim 1, step [a] (reproduced above). *Id.* For example, the '268 Patent discloses that statistical analysis can be performed to forecast the "expected values" of the times when a user will likely be online again to be able to receive scheduled content. *Id.* As explained by Dr. Polish, by forecasting such user behavior, the '268 Patent can more efficiently schedule content based on how each individual user is expected to interact with the content delivery system in the future rather than scheduling the content based on a generalized forecast that is applied across all users. *See* Dr. Polish Decl. ¶ 62.

Additionally, the '268 Patent discloses the innovation of generating an "ordered [master] list" of content for delivery based not only on the forecasted "expected values" of user behaviors but by also taking into consideration a priority of a content delivery system itself and then generating an "individual list" for a user when the user logs in and becomes available to receive scheduled content. *See* '268 at 5:25-6:20; *see also* Dr. Polish Decl. at ¶ 63. These innovations improve the efficiency of conventional content delivery systems and are captured in all of the claims of the '268 Patent such as, for example, in claim 1, steps [b] and [c] (reproduced above). *Id.* As explained by Dr. Polish, by first generating an "ordered [master] list" based on "expected values" relating to multiple users, the '268 Patent is able to better take into consideration a priority of the content delivery system that relates to multiple users such as, for example, a priority of the system to fulfill advertisement contracts to deliver certain number of advertisements to certain

number of users.  *Id.*  Furthermore, by using the "ordered [master] list" to then generate "individual lists" upon "user logins," the '268 Patent is able to generate an "individual list" that is tailored for each user while still satisfying the overall priority of the content delivery system as reflected in the "ordered [master] list."  *Id.*

Further, as noted by Dr. Polish, the combination of the aforementioned innovations is also an innovation in itself because holistically, they advance the compute arts by improving the overall efficiency of conventional content delivery systems.  *See* Dr. Polish Decl. at ¶ 64.

Accordingly, as shown above, the claims of the '268 are directed to specific innovations over conventional systems and are patent eligible.

**D.      Netflix Fails to Show that the Claims of the '691 Patent are Not Patent Eligible**

The '691 Patent claims patent-eligible subject matter.  The claims of the '691 Patent recite specific and concrete features and steps that innovate over conventional content delivery systems geared at outside-of-the-home settings.  Such innovations over existing conventional systems are patentable subject matter.  *See Alice,* 134 S. Ct. at 2358 (the Supreme Court noted that "the claims in *Diehr* were patent eligible because they improved an existing technological process") (citing to *Diehr*, 450 U.S. 175).

Conventional content delivery systems that were geared at outside-of-the-home settings did not factor in specifics of a particular user, and as a consequence, programming "directed to users while they [were] outside of their home[s] [was] generally not targeted to a single user, but [was] typically presented generically or randomly to all users who [were] present at that time and location."  *See* '691 at 1:47-56; *see also* Dr. Polish Decl. at ¶ 74.  Accordingly, content (*e.g.,* advertisements) directed to users outside their homes were not very relevant.  *See* '691 at 1:47-56; *see also* Dr. Polish Decl. at ¶ 75.

To make programming directed to users outside of their homes more relevant, the '691 Patent discloses several innovations that improve upon conventional content delivery systems.  *See* Dr. Polish Decl. at ¶¶ 75, 86-89.  First, in addition to obtaining information about a user's location (*e.g.,* at a gas station) and an action being performed at that location (*e.g.,* purchasing gas or having a car serviced), the '691 Patent discloses further capturing additional information relating to the

user's action (*e.g.,* the type or grade of the gas being purchased or the nature of the service being performed such as an oil change.)  *See* '691 at 3:21-26, 17:16-37; *see also* Dr. Polish Decl. at ¶¶ 70, 87.  By capturing such additional information, the '691 Patent discloses that more pertinent programming can be selected and presented to a user outside of the home such as "advertising for another item that is complementary to the item being purchased."  *Id.*

Further, the '691 Patent discloses combining information about a user's actions (*e.g.,* the identity of the action, location where the action is taking place, and additional information relating to the user action) with pre-existing information present in the user's profile to make inferences or determinations about what programming may be pertinent to the user in order to provide more relevant programming to the user outside of the home.  *See* '691 at Abstract, 3:10-4:5, 17:29-37; *see also* Dr. Polish Decl. at ¶¶ 70-72, 88.  For example, by associating information about a user action (*e.g.*, that the user is getting an oil change at a gas station) with the pre-existing user profile information (*e.g.* which may include the user's vehicle service records), the system can make determinations about the user (*e.g.,* that user's vehicle is due for a manufacturer's recommended service), and use the determinations to provide more relevant programming to the user while the user is outside the home (*e.g.*, providing advertisements for a special on the recommended or related service while the user's car is being serviced at the gas station).

The innovations relating to content delivery disclosed in the '691 Patent of obtaining information about a user action at outside-the-home settings (*e.g.,* the identity of the action, location, and additional information about the action), combining the user action information with pre-existing information in a user's profile, making inferences and determinations based on such combined information, and providing programming based on such determinations to the user when the user is outside of their home are concrete innovations over the conventional content delivery systems because, among other things, they advance the computer arts by making the programming that is provided to a user outside of their home much more relevant to the user.  *See* Dr. Polish Decl. at ¶ 75.

**1.**     **Claims of the '691 Patent are Not Directed to an Abstract Idea**

**a.**     **Netflix's Characterization of the Claims is Wrong**

Contrary to Netflix's assertions, the claims of the '691 are not directed to an abstract idea. Netflix's characterization of the claims of the '691 Patent as being directed to an abstract idea of "selecting an item of special interest to a user based on a user profile updated with information about the user's actions and location" can only be achieved by ignoring concrete claim limitations and inappropriately oversimplifying the claims.

For example, claim 1 of the '691 Patent is reproduced below:

1. A method for providing targeted programming to a user outside of the user's home, the method comprising:
   [a] receiving a user identification associated with a user, the user identification comprising an identifier corresponding to an account number used in a transaction;
   [b] receiving reception site information to identify a user action and a site at which the user action is taking place;
   [c] capturing additional user information from the identified user action and the reception site information;
   [d] updating a user profile to include the captured additional user information;
   [e] receiving the updated user profile based upon the user identification and the additional user information, the user profile including information characteristic of the user;
   [f] processing the updated user profile to provide user determinations regarding user actions;
   [g] selecting a targeted program based on the reception site information and the updated user profile and the user determinations, and
   [h] providing the targeted program for presentation to a user outside of the user's home.

To arrive at Netflix's characterization of the claims of the '691 Patent as an abstract idea of "selecting an item of special interest to a user based on a user profile updated with information about the user's actions and location," the claims would have to be overly simplified in an exaggerated manner. *See* Dr. Polish Decl. at ¶ 80. For example, with respect to claim 1 (reproduced above), the entirety of steps [a], [c]-[f], and [h] along with limitations relating to "user determinations" in the remaining steps would need to be ignored to arrive at Netflix's characterization of the claims. *Id.* Put in another way, Netflix is in essence alleging that with respect to claim 1, just steps [b] and a portion of [g] minus "user determinations" describes the entirety of the claim. *Id.* But the claims of the '691 are not simply directed to the selection of

1   targeted programming based merely on a user profile updated with information about a user's

2   action and location as alleged by Netflix.  *Id.*  The claims of the '691 Patent as recited, for example

3   in claim 1, also require "capturing additional user information from the identified user action and

4   the reception site information" and processing a user profile updated with the "captured additional

5   user information" in order make "determinations" about the "user actions" to provide more relevant

6   content to the user outside of the user's home.  *See* '691 at claim 1, steps [a], [c]-[f], and [h]

7   (reproduced above); *see also* Dr. Polish Decl. at ¶ 80.  More specifically, Netflix's assertions

8   suggest that the claims of the '691 Patent would amount to nothing more than a system that selects

9   content for a user based on information that the user is at some location (*e.g.,* a gas station) and is

10  performing some action at that location (*e.g.,* getting gas or obtaining service).  But, Netflix's

11  assertions are incorrect because systems embodying the claims of the '691 Patent would also

12  require capturing additional information relating to the user action (*e.g.,* that the user is obtaining

13  specifically an oil change service), making determinations about the user based on the user's profile

14  and the additional information (*e.g.,* that the user is presently at a gas station getting service but the

15  user is also due for a manufacturer's recommended service based on service records present in the

16  user's profile), and providing relevant programming to the user outside of the user's home (*e.g.,*

17  providing advertisements for a special on the recommended or related service).  *See* '691 at

18  3:47-59, 17:29-37; *see also* Dr. Polish Decl. at ¶ 80.  Netflix's characterization wholly ignores these

19  concrete aspects of the claims of the '691 Patent, which as discussed in the next section **III.D.2**

20  below, provides for certain inventive aspects of the claims of the '691 Patent.  *See also* Dr. Polish

21  Decl. at ¶¶ 86-89.  Hence, Netflix's characterization of the claims is unjustified, and the claims of

22  the '691 Patent are not directed simply at "selecting an item of special interest to a user based on a

23  user profile updated with information about the user's actions and location" as alleged by Netflix.

24          **b.        The Claims Do Not Implicate Concerns Over Abstract Ideas**

25          The claims of the '691 Patent are not directed to a basic tool of scientific and technological

26  work or a building block of human ingenuity, which are the distinctive qualities of patent-ineligible

27  laws of nature, natural phenomena, and abstract ideas.  *See Alice*, 134 S. Ct. at 2354 ("Laws of

28  nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological

work.… Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more.") (internal citations and quotes omitted).  For example, claim 1 (reproduced above) requires "receiving a user identification associated with a user, the user identification comprising an identifier corresponding to an account number used in a transaction," "capturing additional user information from the identified user action and the reception site information," and "processing the updated user profile to provide user determinations regarding user actions."  Other claims of the '691 Patent have similar limitations.  *See* Dr. Polish Decl. at ¶ 81.  As explained by Dr. Polish, given that the claims of the '691 Patent are limited to specific implementations that receive such "user identification," capture "additional information" in addition to identifying a user action and the location at which the user action is taking place, and make inferences or determinations about the user based on the information, one of ordinary skill in the art would not consider the claims of the '691 Patent as being directed to something as broad and fundamental as a basic building block of computer science, let alone a basic tool of scientific and technological work or a building block of human ingenuity.  *See* Dr. Polish Decl. at ¶ 81.

Additionally, the claims of the '691 Patent do not preempt all human endeavors in embodying the idea of, "selecting an item of special interest to a user based on a user profile updated with information about the user's actions and location" as alleged by Netflix.  *See* Dr. Polish Decl. at ¶ 82.  As explained by Dr. Polish, the claims of the '691 Patent are limited to specific implementations that receive "user identification associated with a user, the user identification comprising an identifier corresponding to an account number used in a transaction," capture "additional information" in addition to identifying a user action and a location at which the user action is taking place, and that make inferences or determinations about the user based on such information in order to select targeted programming for the user.  *Id.*  Given that the claims of the '691 are limited to such specific implementations, one of ordinary skill in the art, as explained by Dr. Polish, would not perceive the claims of the '691 Patent as preempting all human endeavors in embodying the idea of "selecting an item of special interest to a user based on a user profile updated with information about the user's actions and location" as alleged by Netflix.  *Id.*  Accordingly, the

claims of the '691 Patent do not implicate — and are distinguished from — the concerns of

pre-emption that underlie the Supreme Court's jurisprudence in excluding abstract ideas from

patentable subject matter. *See Alice*, 134 S. Ct. at 2354 ("Laws of nature, natural phenomena, and

abstract ideas are not patentable.… We have described the concern that drives this exclusionary

principle as one of pre-emption.… We have repeatedly emphasized this concern that patent law not

inhibit further discovery by improperly typing up the future use of these building blocks of human

ingenuity.") (internal citations and quotes omitted).

### c.       The Claims are Not Directed at a Mental Process

Also, contrary to Netflix's assertions, no one of ordinary skill in the art would perceive the

claims of the '691 Patent as covering mental thoughts or pen and paper implementations. *See* Dr.

Polish Decl. at ¶ 84. As explained by Dr. Polish, the limitations recited in the claims of the '691

Patent reflect that the claims are directed at a content delivery system. *Id.* For example, with

respect to claim 1, the claim terms "receiving a user identification associated with a user, the user

identification comprising an identifier corresponding to an account number used in a transaction,"

"updating a user profile to include the captured additional user information," "selecting a targeted

program based on the reception site information and the updated user profile and the user

determinations," and "providing the targeted program for presentation to a user outside of the user's

home" would indicate to one of ordinary skill in the art, especially in light of the specification, that

the claims would be implemented by a system that stores and processes user profiles associated

with user identifications and that automatically selects targeted programming for users. *See* '691 at

Abstract, 1:7-11, 3:10-4:5; *see also* Dr. Polish Decl. at ¶ 84. Hence, one of ordinary skill in the art

would not perceive the claims of the '691 Patent as being directed to human activities. *Id.* As Dr.

Polish further explained, nothing in the claims or the specification of the '691 Patent suggests that

the claims would cover human activities in which humans maintain and process user profile

information mentally or using a pen and paper implementation in order to select programming for

users. *Id.* Rather, as explained by Dr. Polish, given that the claims of the '691 Patent are directed

to innovations over conventional content delivery systems, one of ordinary skill in the art would

understand that the claims are directed to specific implementations of content delivery systems and

1    not to human activities as alleged by Netflix. *Id.* This factual difference in the parties' position

2    alone should be sufficient to preclude summary judgment. *See France Telecom*, 2014 WL

3    1478850, at *11 (recognizing that an expert declaration disputing the defendant's assertions that the

4    patent claims can be performed in the human mind or with a pen and paper is sufficient to raise a

5    genuine issue of material fact to foreclose summary judgment).

6         For all of the foregoing reasons, the claims of the '691 are not directed to an abstract idea.

7         **2.    Claims of the '691 Patent are Inventive in the Computer Arts**

8         The claims of '691 Patent recite inventive concepts that innovate over conventional content

9    delivery systems, making the claims patent eligible. *See* Dr. Polish Decl. at ¶¶ 86-89; *see also*

10   *Alice*, 134 S. Ct. at 2355 (noting that a claim is patent eligible even when directed to a patent

11   ineligible concept such as an abstract idea if the claim includes an inventive concept — "*i.e.,* an

12   element or combination of elements that is 'sufficient to ensure that the patent in practice amounts

13   to significantly more than a patent upon the ineligible concept itself.'").

14        For example, the '691 Patent discloses the innovation of identifying a user and user action

15   when the user is outside of the home, capturing additional information associated with the user

16   action beyond the location where the action is taking place, and associating the additional

17   information with the user's profile in order to select more relevant programming for the user. *See*

18   '691 at Abstract, 3:10-4:5; *see also* Dr. Polish Decl. at ¶ 87.  This innovation improves the

19   relevance of content provided to users outside of their homes and is captured in all of the claims of

20   the '691 Patent such as, for example, in claim 1, steps [a]-[d], [g] and [h] (reproduced above). *Id*.

21   As explained by Dr. Polish, by identifying not only that a user is at a store (*e.g.*, a particular

22   location) and making a purchase (*e.g.*, a user action), but also capturing additional information (*e.g.*,

23   the specific type of product being purchased), the system of the '691 Patent can select "advertising

24   for another item that is complementary to the item being purchased" and provide this more relevant

25   content to the user. *Id.*

26        Additionally, the '691 Patent discloses the innovation of using information about a user's

27   action (*e.g.,* the identity of the action, location, and additional information relating to the user

28   action) with pre-existing information present in a user's profile to make inferences or

1  determinations about what programming may be pertinent to the user in order to provide more

2  relevant content to the user outside of the user's home.  *See* '691 at Abstract, 3:10-4:5, 17:29-37;

3  *see also* Dr. Polish Decl. at ¶ 88.  This innovation improves the relevance of content provided to

4  users outside of their homes and is captured in all of the claims of the '691 such as, for example, in

5  claim 1, steps [e]-[h] (reproduced above).  *Id.*  As explained by Dr. Polish, the '691 Patent discloses

6  that more relevant programming can be selected for a user by taking into account not only that a

7  user is at a location and performing some particular action (*e.g.,* that the user is at a gas station

8  getting an oil change), but by associating that information with a user's pre-existing user profile

9  information (*e.g.,* which includes the user's vehicle service records).  As further explained by Dr.

10 Polish, by associating such information, the system can make certain determinations about the user

11 (*e.g.,* that user is due for a manufacturer's recommended service), and use the determinations to

12 provide more relevant content to the user while the user is outside of the home (*e.g.*, to provide

13 advertisements for a special on the recommended or related service while the user is having her car

14 serviced at the gas station.)  *Id.*

15      Further, as noted by Dr. Polish, the combination of these aforementioned innovations is also

16 an innovation in itself because holistically, they advance the computer arts by improving the overall

17 relevance of content provided by conventional content delivery systems to users outside of their

18 homes.  *See* Dr. Polish Decl. at ¶ 89.

19      Accordingly, as shown above, the claims of the '691 are directed to specific innovations

20 over conventional systems and are patent eligible.

21 **IV.     CONCLUSION**

22      Netflix fails to present clear and convincing evidence that the patents-at-issue, U.S. Patent

23 Nos. 7,055,169, 7,305,691 and 8,332,268, are directed to un-patentable, abstract ideas.  Rather, as

24 shown above, the patents-at-issue are directed to specific, patent-eligible implementations that

25 innovate over conventional systems.  Netflix's motion for summary judgment should be denied.

26                                      KIRKLAND & ELLIS LLP

27                                       */s/ John R. Edwards*
                                      _____

28                                      John R. Edwards (S.B.N. 244310)