UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OPENTV, INC.,

    Plaintiff,

    v.

NETFLIX INC, et al.,

    Defendants.

Case No. 14-cv-01525-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER §101**

## I. INTRODUCTION

In this patent infringement action, defendant Netflix, Inc. seeks summary judgment that three of the patents-in-suit are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter. Netflix contends U.S. Patents 7,055,169, 7,305,691, and 8,332,268 disclose only "abstract ideas" outside the permissible scope of patent protection. For the reasons explained below, the motion will be denied as to the '169 patent, and granted as to the '691 and '268 patents.

## II. BACKGROUND

Plaintiff in this action is OpenTV, Inc., which describes itself as in the business of developing software that "provides its customers with high quality technology, services, and end-to-end solutions enabling intuitive and personalized viewing experiences for consumers." OpenTV alleges its software products "enable a variety of advanced and interactive services for television, including advanced user interfaces, video-on-demand ("VOD"), personal video

recording ("PVR"), high-definition ("HD"), interactive and addressable advertising, and a variety of enhanced television applications." The original complaint herein alleged that Netflix infringes seven patents held by OpenTV. Subsequently, OpenTV and an affiliated entity, Nagra France SAS, jointly filed a separate infringement action against Netflix, involving several additional patents. The two actions have been related, and consolidated for all purposes, so the balance of this order will refer to "plaintiffs" in the plural. The present motion for summary judgment involves only three of the patents-in-suit, and has been filed prior to any claim construction proceedings.[1]

### III.  LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly

---

[1] As a general rule, multiple rounds of summary judgment motions will not be entertained absent a showing of significant judicial economy in such an approach. Accordingly, in the event a party may wish to file more than one motion, better practice is to present a plan for the Court's approval in connection with case management proceedings prior to the first filing.

supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

Here, the focus of the parties' arguments is not, for the most part, on factual issues. Rather, the question primarily is whether Netflix is entitled to a judgment of invalidity as a matter of law, given the nature of the patent claims. As the discussion below explains, however, in the case of one of the patents, that may depend on how the claims are ultimately construed.

## IV. DISCUSSION

Section 101 of the Patent Act defines the subject matter eligible for patent protection. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,

subject to the conditions and requirements of this title." 35 U.S.C. § 101.  Netflix contends the '169, '691, and '268 patents fail to qualify under this section.

The Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), provides the relevant analytical framework for this motion.[2]  As explained in *Alice*, the Court has "interpreted § 101 and its predecessors . . . for more than 150 years" to "'contain[] an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.'" *Alice*, 134 S. Ct. at 2354, quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (further internal quotation marks and brackets omitted).

The *Alice* court then applied a two-step framework for determining patent eligibility, previously articulated in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012):

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept" – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.

*Alice*, 134 S. Ct. at 2355.

As noted, Netflix's contention here is that the patents are drawn only to abstract ideas. *Alice* explained, "The 'abstract ideas' category embodies "the longstanding rule that '[a]n idea of itself is not patentable.' " *Id*. at 2355;  *see also Le Roy v. Tatham,* 14 How. 156, 175, 14 L.Ed. 367 (1853)*.* ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these

---

[2] The day after this motion was heard, the Federal Circuit released its decision in *Ultramercial, Inc. v. Hulu, LLC*, ––– F.3d ––––, 2014 WL 5904902 (Fed. Cir. Nov.14, 2014).  Subsequently, the Federal Circuit decided *DDR Holdings, LLC v. Hotels.com, L.P*., ––– F.3d ––––,  2014 WL 6845152 (Fed. Cir. Dec. 5, 2014).  These further applications of the *Alice* principles by the Federal Circuit are also instructive, as discussed herein.

cannot be patented, as no one can claim in either of them an exclusive right").

*Alice* repeated the caution given in *Mayo*, however, that the exclusion for "abstract ideas" must not be applied too broadly, "we tread carefully in construing this exclusionary principle lest it swallow all of patent law." 134 S. Ct. at 2354 (citing *Mayo*, 132 S.Ct., at 1293–1294.) At some level, "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S.Ct., at 1293.

On the facts before it, the *Alice* court also expressly declined to "labor to delimit the precise contours of the 'abstract ideas' category." 134 S. Ct. at 2357. Instead, it merely found that the concept of providing an "intermediated settlement" was not meaningfully distinguishable from the idea of "risk hedging" at issue in *Bilski v. Kappos*, 561 U.S. 593 (2010). In both instances, the idea involved was "a fundamental economic practice long prevalent in our system of commerce." *Id.* at 2356. The question, therefore, is whether the patents here similarly are directed only at abstract ideas, and if so, whether there is any "something more" claimed that would render them valid anyway.

**The '169 patent**

The '169 patent is entitled "Supporting common interactive television functionality through presentation engine syntax." Its abstract explains that the patent discloses, "[a] method and mechanism for enabling the creation and/or control of interactive television content using declarative-like directives such as HTML, scripting languages, or other languages." The specification further suggests that the claimed invention is directed at fulfilling a need for a "more flexible scheme" for addressing the growing ability of modern television receivers to access an ever-wider range of data and resources. According to the specification, existing approaches such as "the DVB MHP 1.1 specification and DAVIC 1.4.1 Part 9 specification" are effective on "DAVIC broadcast networks," but "may not work on ATSC networks or other networks that define different or even proprietary signaling formats."

Netflix contends the '169 patent claims only the abstract idea of "ensuring that the

necessary resources are available before commencing a presentation that requires those resources."

It points to Claim 1:

> A method comprising:
>
> > [a] receiving one or more directives, wherein said directives are indicative of an audio, video and/or graphic presentation which requires a set of resources;
> >
> > [b] determining whether said one or more directives includes a prerequisite directive which indicates that acquisition of a subset of said set of resources is a prerequisite for initiating the presentation;
> >
> > [c] initiating said presentation, in response to determining the one or more directives do not include said prerequisite directive; and
> >
> > [d] prohibiting initiation of said presentation until said subset of resources are acquired, in response to determining the one or more directives include said prerequisite directive.

Netflix asserts "[o]n its face, this claim is directed to an abstract idea." Netflix contends that (at least as the claim is drafted) there is nothing that could not be performed in the mind of a person, or perhaps on pen and paper. Netflix offers up a court-based example it argues would constitute practicing the claim:

> [A] person (say, a lawyer on this case) could [a] receive a directive from the Court ("the Court will allow a PowerPoint presentation in accordance with the local rules") which is indicative of a presentation which requires a set of resources (e.g., a laptop, projector, display screen, and anything else required by the local rules). The lawyer could [b] determine whether the Court's directive includes a prerequisite directive that indicates that acquisition of a subset of these resources is needed to begin the presentation (e.g., whether the local rules require the parties to obtain an order before bringing equipment into the building). The lawyer could then [c] initiate the presentation if no prerequisite were necessary or [d] prohibit initiation until s/he had acquired the necessary resources (e.g., obtained the necessary order).

Plaintiffs contend Netflix has oversimplified and misrepresented the patent and its claims. They offer the declaration of Dr. Nathaniel Polish, who opines that a person of ordinary skill in the art would understand that the claims of the patent "would be implemented by a content delivery system" and that the "directives" are declarations formed using a declarative computer language.

While plaintiffs stop short of offering a proposed claim construction *per se*, they in effect argue that the scope of the claim is much narrower than it might appear "on its face."

Although Netflix is correct that a Section 101 validity analysis *may* be carried out prior to claim construction in an appropriate case, it would be premature to do so in this instance. Without dispute, the language of Claim 1 of the '169 patent is broad on its face and is not plainly limited, or even tethered, to the technologies described in the specification. Nevertheless, this is not clearly an instance where the patentee is merely attempting to claim a computer-based implementation of a long-established concept or practice. At least at this juncture, the patent appears to be directed at providing a technological solution to a problem that arises in the computer/interactive television context. As such, the circumstances are similar to those described in *DDR Holdings*:

> [T]hese claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

2014 WL 6845152, at *10.

Whether, and the extent to which, the claims have been appropriately limited so that they are "rooted" in the technology in order to overcome a problem specifically arising in that realm is a question for another day. Plaintiffs may be hard pressed to show that the broad language of the claims, which on its face arguably could describe a PowerPoint presentation in a courtroom, should be construed to have a much narrower scope. They will, of course, have to show that the ordinary rules of claim construction lead to such a result, including "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). If, however, plaintiffs can show that properly construed, the '169 patent claims relate to a technological solution to a "problem specifically arising in the realm" of interactive television,

they would not as plainly fall into the category of "abstract ideas" that are ineligible for patent protection. *Cf.*, *Digitech Image Technologies v. Electronics for Imaging, Inc*., 758 F.3d 1344, 1351 (Fed. Cir. 2014) (suggesting that if method claims had been sufficiently tied to the "image processor" described in patent, patentability requirement of §101 might be satisfied).

Netflix suggests, in effect, that plaintiffs should be put to the burden of advancing, and supporting, a specific claim construction at this juncture, and that if they have not done so, that summary judgment should enter. Certainly plaintiffs could have made a stronger showing that claim construction has the potential to lead to a different result. Nevertheless, Netflix acknowledges discretion lies to defer the invalidity analysis until after claim construction. Particularly given that these claims, however they ultimately may be construed, appear unlikely to fall neatly into the paradigm of an invalid attempt to patent the mere use of the internet or general purpose computers to implement old, common, business ideas, Netflix has not shown at this juncture that it would be appropriate to find them invalid as a matter of law.[3] Accordingly, the motion for summary judgment is denied as to the '169 patent.

**The '691 patent**

The '691 patent is entitled "System and method for providing targeted programming outside of the home." While the specification states that the "programming" can be "any type of content and/or information that may be communicated to a user," it also makes clear that a primary potential use of the system is to allow advertisers to direct customized ads to individuals

---

[3] As the *DDR Holdings* court noted, however, it will not be enough for plaintiffs to show simply that the patent is directed at solving a specific purported technological problem, as opposed to using computers or the internet to implement an existing idea. *See* 2014 WL 6845152 at *11 ("We caution, however, that not all claims purporting to address Internet-centric challenges are eligible for patent."). Indeed, as discussed below, Netflix is entitled to summary judgment of invalidity as to the '268 patent even though it claims a method for addressing a purported challenge specific to providing online advertising.

ORDER RE MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
CASE NO. 14-cv-01525-RS
8

based on data gathered as to those individual's specific interests and possible needs. The "Background" section of the specification states:

> Advertisers, for example, often collect user profile information from various mailing lists to target direct mailing advertising campaigns to users in their homes.
>
> Advertisers, however, generally do not have the same type of access to user profile information while providing advertising to users outside of their homes. Thus, advertising directed to users while they are outside of their home is generally not targeted to a single user, but is typically presented generically or randomly to all users who are present at that time and location.

The patent proposes handling this "problem" of addressing people individually outside their homes by collecting identifying information about persons at various places where they are likely to provide such information directly or indirectly. The specification explains: "[t]he user identification information may be obtained from the user directly or indirectly and may include, for example, a credit card number, personal identification number ("PIN"), account number, name, birth date, phone number, zip code, city, county, state, country, region, social security number, driver's license number, license plate number, vehicle identification number, or other code that identifies the user either individually or as a member of a group." Thus, for example, a person who uses a credit card at a gas pump may be identified, and then targeted for advertising on a display screen on the pump.

Claim 1 describes the process more generally:

> A method for providing targeted programming to a user outside of the user's home, the method comprising:
>
> [a] receiving a user identification associated with a user, the user identification comprising an identifier corresponding to an account number used in a transaction;
>
> [b] receiving reception site information to identify a user action and a site at which the user action is taking place;
>
> [c] capturing additional user information from the identified user action and the reception site information;

      [d] updating a user profile to include the captured additional user information;

      [e] receiving the updated user profile based upon the user identification and the additional user information, the user profile including information characteristic of the user;

      [f] processing the updated user profile to provide user determinations regarding user actions;

      [g] selecting a targeted program based on the reception site information and the updated user profile and the user determinations, and

      [h] providing the targeted program for presentation to a user outside of the user's home.

Netflix's characterization of this patent as embodying only an "abstract idea" is accurate. The concept of gathering information about one's intended market and attempting to customize the information then provided is as old as the saying, "know your audience." Like the concepts in *Bilski* and *Alice*, the mere fact that generic computer processors, databases, and internet technology, can now be used to implement the basic idea, with certain perceived greater advantages, does not give rise to a patentable method. The '691 patent simply takes "long prevalent" concepts and, in the specification, proposes using the data and communication resources that are available through the internet to carry them out more effectively.

Thus, the '691 patent claims fail both steps of the *Alice* framework. The idea is abstract, and no limitations exist in the claims to provide an "inventive concept" sufficient to transform that idea into patent-eligible subject matter. Indeed, the claim language itself does not even expressly call for the use of computers or the internet. As such, the claims unquestionably do no more than "simply instruct the practitioner to implement the abstract idea with routine, conventional activity." *Ultramercial, Inc.* 2014 WL 5904902 at *5. To the extent the patent should be understood as teaching use of internet and related technology, however, even such additional limitations cannot save the claims. *Id.* ("the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101."). Accordingly, the motion for summary judgment is granted as to the '691 patent.

**The '268 patent**

The '268 patent is entitled, "Method and system for scheduling online content delivery." Its specification makes clear it also relates primarily to the delivery of customized advertising, in this instance in the context of internet browsing. The '268 patent specification incorporates by reference U.S. patent application Ser. No. 09/558,755 filed Apr. 21, 2000 which is entitled "Method And System For Web User Profiling And Selective Content Delivery." That application purports to disclose "a method and system for profiling online users (who are also referred to herein as clients or subscribers) based on their observed [internet] surfing habits and for selectively delivering content, *e.g.*, advertising, to the users based on their individual profiles."

The gist of the invention claimed in the '268 patent lies in using predictions of when users will be logged in to the internet, for purposes of scheduling delivery of advertising to them in a more efficient manner.

Claim 1 provides:

> A method of scheduling delivery of multiple items of content selectively to a plurality of online users, comprising:
>
> [a] determining expected values relating to each user being online to access information over the Internet during a given time period;
>
> [b] generating an ordered list of the items of content to be selectively delivered to the users based on the expected values, said ordered list being prioritized to meet delivery requirements associated with said items of content; and
>
> [c] generating an individual list of items of content to be delivered to each user based on the ordered list, wherein said individual list is dynamically generated for each user on user login.

Netflix characterizes this patent as drawn to nothing more than the abstract idea of "using information about users to customize a list of content for delivery." Again, Netflix contends the method could be performed on pen and paper.

This patent falls somewhere in between the first two. Unlike the '691 patent, the idea is not merely a computer/internet *implementation* of an old idea. Here, as in the case of the '169 patent, the problem purportedly being solved can be more nearly described as an issue with the

internet technology itself. That said, even assuming the claims are limited to the online technology context,[4] plaintiffs have not shown how the claims describe anything more than the abstract idea of attempting to provide as much appropriately-selected content to users as possible, based on predictions as to their online availability and other information gathered about them. The claims are not meaningfully distinguishable from those held invalid in *Ultramercial*.

In *Ultramercial*, the court held that a claim setting out eleven steps "for displaying an advertisement in exchange for access to copyrighted media" merely "recites an abstraction." *Ultramercial*, 2014 WL 5904902 at *4. The three steps specified here are no more tangible. In both instances, the claims "describe an abstract idea, devoid of a concrete or tangible application." *Id.* In neither case are there any additional claim limitations sufficient to transform the abstract idea into patent-eligible subject matter. Again, mere use of general purpose computers and/or the internet does not suffice. *Id.* Accordingly, the motion for summary judgment is granted as to the '268 patent.

## V. CONCLUSION

The motion for summary judgment of invalidity is denied with respect to the '169 patent, and granted as to the '691 and '268 patents. Unless a party makes a showing that entry of judgment under Rule 54(b) is warranted, the conclusion as to the '691 and '268 patents will be incorporated in any final judgment in this action.

**IT IS SO ORDERED**.

Dated: December 16, 2014

_____
RICHARD SEEBORG
United States District Judge

---

[4] Indeed, the claim language here uses the term "online" and therefore arguably more clearly ties the claims to the technology described in the specification than do the claims of the '169 patent.